**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Harry CONWAY, Defendant-Appellant.**

**No. 74–2284.**

United States Court of Appeals,
Fifth Circuit.

Feb. 12, 1975.

Rehearing and Rehearing En Banc
Denied April 2, 1975.

Owen A. Neff, Cicero C. Sessions, New Orleans, La., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Ronald J. Waska, Mary L. Sinderson, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.

COLEMAN, Circuit Judge.

After trial to a jury, Harry Conway, defendant-appellant, was convicted on a two count indictment alleging in Count One a malicious attempt by means of explosives to bomb a building affecting interstate commerce, a violation of 18 U.S.C., § 844(i), and in Count Two of traveling in interstate commerce with intent to promote the unlawful activity of arson in violation of Maryland laws and thereafter performing acts to facilitate the said unlawful activity in violation of 18 U.S.C., § 1952(a)(3). Mr. Conway was fined $5,000 and placed on supervised probation for three years. We affirm.

Appellant owned an interpreting company in Greenwich, Connecticut. The

prosecution centered around the testimony of Wiley F. Altman, operations manager of the Astrohall in Houston, Texas. Mr. Altman testified that he met the appellant in connection with a 1968 convention in the Astrohall, and that he had an association with appellant in two or three other conventions between 1968 and 1972.

The witness testified that during April, 1972, appellant handled the foreign language interpretation for a convention being held in the Astrohall; that on April 19 Mr. Conway came to his office "out of the blue" with a proposition to seek Altman's assistance in blowing up a building in Landover, Maryland, which was owned by a business competitor of appellant. Conway added that he was on his way out of town, and instructed Altman to call him if he "came up with anything".

Altman testified that he intentionally gave Conway the impression he could find someone to bomb the building, and the next day called the Secret Service in Austin and related Conway's proposition. The witness was subsequently contacted by Houston police officers and by agents Lowry and Johnson of the Alcohol, Tobacco, and Firearms Division of the United States Treasury Department (ATF).

On May 9, 1972, appellant called Altman to find out what progress had been made pursuant to their conversation of April 19. Altman had been furnished tape recording equipment by the Houston police, and the conversation was recorded in the presence of three Houston police officers and the two ATF agents.

During the period May 9–May 26, 1972, Altman and Conway talked several times, and each conversation was recorded.

During the evening call of May 9, informer Altman advised appellant that he had found people (the people ultimately turned out to be ATF agents Lowry and Johnson) who could do the bombing. During ensuing conversations between May 9 and May 26, informer Altman initiated plans for Conway to take movie pictures of the target building which could be shown to the bombers. He also suggested that a $5,000 down payment be made to those who would blow up the building, with $5,000 to follow upon completion of the job, and another $5,000 be paid to himself as a finder's fee for getting the job done.

As suggested, appellant went to Maryland and filmed the target building, borrowed $15,000 in New York, and flew from New York to Houston on May 26, 1972. Altman met him at the airport, and took him to a local motel where Altman introduced agents Lowry and Johnson to Conway as the persons who would do the bombing in Landover, Maryland. Appellant twice showed the assembled group the movie pictures of the building to be bombed. He then handed $5,000 cash to one of the two agents, and $900 of the finder's fee to informer Altman.

All of the above events occurring in the motel room were recorded by Houston police officers and other ATF agents who occupied the adjoining room. At a prearranged signal, appellant was arrested.

As grounds for reversal, appellant contends:

## I

The District Court erred in failing to enter a judgment of acquittal because

A. The facts established entrapment as a matter of law,

B. It was legally and factually impossible for him to commit the crime charged in Count I,

C. There is a fatal variance between Count II and the facts adduced at trial;

## II

The jury was improperly instructed;

## III

The trial court erred in admitting into evidence certain tape recordings;

### IV

The trial court erred in failing to grant a mistrial following prejudicial statements made by the government prosecutor.

### I

#### (A)

Appellant bases his entrapment argument on United States v. Bueno, 5 Cir., 1971, 447 F.2d 903. In that case there was *uncontradicted* testimony that the defendant, on trial for selling heroin to a government agent, had been furnished the contraband by a government informer. We held that the facts established entrapment as a matter of law because there was no dispute in the evidence that the government supplied the defendant with the means to commit the crime. Conway contends that the "bombers" were supplied by the informer Altman, thus the case is controlled by *Bueno.*

Although Conway testified that informer Altman initiated and planned the bombing, Altman testified the plan originated with Conway. Undoubtedly, there was evidence from which the jury could find (as it did) that the bombing scheme originated with Conway.

▬ The defendant's predisposition to commit the crime remains the test for entrapment, United States v. Russell, 411 U.S. 423, 433, 93 S.Ct. 1637, 36 L.Ed.2d 366; United States v. Register, 5 Cir., 1974, 496 F.2d 1072, 1081. The fact that officers or employees of the government afford opportunities or facilities for the commission of the offense will not defeat a prosecution, Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848.

As Mr. Justice Rehnquist noted in *Russell, supra,* 411 U.S. at 432, 93 S.Ct. 1637, infiltration and limited participation in some unlawful practices frequently affords the only *means of their detection.*

#### (B)

Appellant also contends that a judgment of acquittal should have been entered because it was legally and factually impossible for him to commit the crime charged in Count One—attempting to bomb a building "affecting interstate commerce". He contends that an essential element of this crime is the use of an explosive, and that no showing was made of the existence or use of an explosive by anyone connected with the case.

▬ The defenses of legal and factual impossibility are not applicable to this case. Legal impossibility occurs when the actions which the defendant performs, or sets in motion, even if fully carried out as he desires, would not constitute a crime. Thus, an indictment for attempted rape can be defeated by showing that the woman the defendant attempted to ravish was his wife. However, such is not the case here, since the activity Conway proposed was unquestionably illegal.

▬ *Factual* impossibility denotes conduct where the objective is proscribed by the criminal law but a circumstance unknown to the actor prevents him from bringing it about. The classic example is the thief who picks an empty pocket. When criminal liability has been imposed for attempt where factual circumstances precluded commission of the intended crime, proof of intent to commit a specific crime has generally been emphasized, United States v. Berrigan, 3 Cir., 1973, 482 F.2d 171. For a discussion of factual impossibility, see United States v. Roman, 356 F.Supp. 434 (1973), affirmed 2 Cir., 1973, 484 F.2d 1271, cert. denied, 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974); and W. LaFave & A. Scott, Handbook on Criminal Law 438, 445 (2d Ed., 1972).

▬ The District Court properly declined to recognize impossibility as a defense. Appellant had completed his personal involvement in the case. All that was left for him to do was sit back and watch the bombing take place.

#### (C)

▬ As a final basis for acquittal, appellant contends that there is a fatal variance between the government's alle-

gations under Count Two of the indictment and the evidence adduced at trial.

Count Two of the indictment charged appellant with a violation of 18 U.S.C., § 1952, which prohibits interstate travel with intent to carry on any "unlawful activity". The statute's applicable definition of unlawful activity includes "extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States". It is appellant's contention that at best, all the government established was an intent by him to travel in interstate commerce to procure the *bombing* of a building in Maryland, and that the evidence failed to disclose an intent by him to procure the *burning* of any building.

The record contains sufficient references to burning to indicate that Conway at least anticipated it, and on occasion he seems to have used the words "burning" and "bombing" interchangeably. Informer Altman testified that when Conway initially approached him regarding the bombing, he said, "I want the bastards blown up" or "I want them burned out". Conway later told Altman that "he knew by dynamiting their place and burning it out that he wouldn't put Hargrove out of business, but he would be delaying him. . . . "

On cross examination, the following dialogue took place between appellant and the United States Attorney.

"Q. You admit, Mr. Conway, that the discussion in the course of these events, for which you are on trial, contained the language of explosive, burning, bombing?

"A. Yes, that's what's so frightening about it.

"Q. You do admit that?

"A. Yes."

Earl Hargrove, President of the corporate victim of appellant's plan, testified that due to the paints and plastics his company kept on hand, fire was their biggest fear.

Viewing the testimony in the light most favorable to the verdict the jury had sufficient grounds to determine the appellant knew that fire would play a role in the destruction of his competitor's business.

## II

■ Appellant next contends that the trial court's failure to define arson under Maryland law constituted a failure to submit an essential element of the offense charged in Count Two (violation of 18 U.S.C., § 1952), and is therefore grounds for reversal.

This, however, does not appear to be the test. In United States v. Nardello, 393 U.S. 286, 295, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969), a prosecution under § 1952 for extortion, the Supreme Court held that Congress did not intend to restrict the coverage of the "Travel Act" by defining extortion according to state labels. Writing for the Court, Mr. Chief Justice Warren concluded that it was sufficient that the acts for which the appellee was indicted fall within the "generic term" of extortion.

The Seventh Circuit has reached a similar conclusion. In United States v. Rizzo, 7 Cir., 1969, 418 F.2d 71, 80, cert. denied, Tornabene v. United States, 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260 (1970), that Court held that proof of the violation of the state statute to which reference is made for purposes of prosecution under 18 U.S.C., § 1952 is not an essential element to be proved in such a federal prosecution.

These cases illustrate that in § 1952 cases state law merely serves a definitional purpose. "Arson" is a commonly used and understood word. There was sufficient evidence upon which the jury could find that the appellant traveled in interstate commerce with intent to bomb and/or burn a Maryland building. There is no requirement that the jury be in-

structed on the Maryland definition of arson and there is no reversible error here.

■ Appellant also complains that the trial court failed to define the word "maliciously", and gave an inadequate definition of the word "attempt". There was no objection made at trial (as required by Fed.R.Crim.P. 30), but appellant calls this plain error, hence noticeable under Fed.R.Crim.P. 52(b). However, appellant cites no authority to support this position, and we have found none. The Court's charge, viewed in its entirety, accurately instructed the jury on the applicable law.

■ Regarding "attempt", the Court instructed the jury:

"To 'attempt' an offense means wilfully to do some act, in an effort to bring about or accomplish something the law forbids to be done."

### III

Appellant next strongly urges that it was reversible error for the trial court to admit in evidence and allow the jury to hear two tape recordings.

The government introduced two tapes, one of a series of telephone conversations between appellant and informer Altman, and the other a room tape of events occurring in the Houston Sheraton Inn immediately prior to Conway's arrest. The telephone tape (Government Exhibit 6) originally contained eleven separate conversations, but because the original tape was not produced, and because defense counsel was not furnished with a copy of all eleven conversations, a duplicate tape containing only six conversations was admitted. The six conversations heard by the jury were on the duplicate tape furnished defense counsel prior to trial, and defense counsel was furnished a transcript of all eleven conversations. Because of impairment of defense counsel's copy, only one-half of the room tape was admitted.

■ Appellant contends that admission of the tape in such a confused state violated the best evidence rule. This Court has consistently held that the best evidence rule is applicable only to *writings*, United States v. Ponder, 5 Cir., 1973, 475 F.2d 37, 39; United States v. Duffy, 5 Cir., 1972, 454 F.2d 809.

■ Witnesses for the prosecution testified that *informer* Altman transported one tape back and forth from his home to his office so all conversations would be on the same tape. The ATF agents testified that the tape introduced in evidence was a copy they made of the original. Somewhere in the process, all or part of five conversations was apparently erased. However, there is no evidence, indeed no intimation, that this erasure was intentional, and the authenticity of the tapes remains unquestioned. The tape introduced was relevant, trustworthy, thus of probative value, and properly admitted.

### IV

■ Appellant's final assignment of error is that the trial court erred in denying his motion for a mistrial when the Assistant United States Attorney commented in his closing argument on the fact that defense counsel "has defended many a guilty client". He contends that this placed an alleged fact before the jury which was not in evidence, and created an inference of guilt by association. The jury was instructed to disregard the remark. Although the statement was improper, when this trial is viewed in its entirety it cannot be said in light of the appropriate admonition that it had a substantial impact on the jury's verdict. This is the test prescribed in United States v. Arenas-Granada, 5 Cir., 1973, 487 F.2d 858, 859.

In our view the appellant received a fair trial. The judgment of the District Court is

Affirmed.