**In Re Donald W. GATHWRIGHT, Debtor.**

**Donald W. GATHWRIGHT, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 385–02199–P7.
Adv. No. 87–0545.**

United States Bankruptcy Court, D. Oregon.

April 10, 1989.

Joseph Wetzel, Portland, Or., for plaintiff.

Mark E. Nebergall, Dept. of Justice, Tax Div., Washington, D.C., for United States Internal Revenue Service.

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

Debtor seeks a determination that certain taxes and penalties assessed by the Internal Revenue Service ("IRS") were discharged in his Chapter 7 case, and restitution of funds, plus interest,[1] seized by the IRS post-discharge. The IRS contends that the taxes are nondischargeable under Bankruptcy Code section 523(a)(1)(C)[2] because debtor filed fraudulent returns and/or willfully attempted to evade or defeat the tax. Debtor responds that the returns were correct as filed or that any errors on the returns were the result of oversight or negligence. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

## FACTS

Debtor filed for relief under Chapter 7 of the Bankruptcy Code on June 10, 1985. In his schedules debtor listed a $70,706.39 tax debt owing the IRS. This amount included $62,288.92 previously assessed by the IRS for tax years 1976, 1978, and 1979, including fraud penalties for those tax years. Each tax return in question was due more than three years before debtor filed his bankruptcy petition, and the IRS assessed each tax more than 240 days before the petition.

The IRS audited debtor's tax returns for 1976, 1978, and 1979 and made the following assessments:

|      | Assessment | Addition to Tax |
| ---- | ---------- | --------------- |
| 1976 | $10,532.14 | $ 6,872.26 |
| 1978 | 10,425.30  | 3,410.98 |
| 1979 | 41,331.48  | 13,468.65 |

The IRS has seized more than $7,000.00 from debtor and his wholly-owned corporation since the discharge was granted.

From 1960 to 1969, debtor was employed by the IRS as a Revenue Agent, where he worked primarily with excise taxes. After leaving the IRS, debtor worked for accounting firms and became a certified public accountant ("CPA"). During 1976 through 1979, debtor had his own CPA practice in which he employed other CPAs. While in his CPA practice debtor prepared tax returns for his clients. His total billings increased between 1976 and 1979.

Between 1972 and 1980, debtor experienced financial problems, which affected his family and contributed to his wife's mental and physical difficulties. Her mental and physical problems in turn caused additional stress on debtor. Sometime before 1979, debtor was in an automobile accident that affected his vision and consequently his ability to conduct his CPA practice. He resolved his vision problems in 1979 or 1981.

## ISSUE

Is debtor's tax liability for 1976, 1978, and 1979 nondischargeable under section 523(a)(1)(C)?

## ANALYSIS

### A.

A discharge granted under 11 U.S.C. § 727 does not discharge an individual from a debt for a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). The parties agree that the IRS has the burden of proving that the tax returns were fraudulent or that debtor will-

---

**1.** Plaintiff in his complaint and argument seeks attorney fees. He does not explain his theory for recovery of fees in the complaint, his trial memorandum, or the pretrial order. The court will not speculate on the basis for the attorney fee request, therefore plaintiff's prayer for attorney fees is denied.

**2.** 11 U.S.C. §§ 101 *et seq.*

fully attempted to evade or defeat the tax.[3] The IRS contends that the terms "fraudulent" and "willfully attempted to evade or defeat" the tax should be construed consistently with their usage in certain sections of the Internal Revenue Code ("IRC," 26 U.S.C.).

 I agree that the term "fraudulent return" in section 523(a)(1)(C) should be construed consistently with section 6653(b)[4] of the IRC. *In re Harris,* 49 B.R. 223 (Bankr.W.D.Va.1985), *mod. on reconsideration* 59 B.R. 545 (Bankr.W.D.Va. 1986). The IRS must prove that debtor's actions were deliberate, not accidental, and done with fraudulent intent. *Id.* Debtor must have engaged in a deliberate act calculated to defraud. *Matter of Fox,* 609 F.2d 178 (5th Cir.), *cert. denied* 449 U.S. 821, 101 S.Ct. 78, 66 L.Ed.2d 23 (1980) (applying section 17a(1) of the Bankruptcy Act, which is substantially the same as section 523(a)(1)(C)).

 I also agree to a limited extent with the IRS's assertion that the phrase "willfully attempted in any manner to evade or defeat such tax" in section 523(a)(1)(C) should be interpreted in the same way as section 7201(a) of the IRC. Under section 7201(a), which provides that it is a felony to "willfully attempt[ ] in any manner to evade or defeat any tax imposed by [Title 26] or the payment thereof," the IRS must prove a willful and positive attempt to evade or defeat tax. *Spies v. United States,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). Although section 523(a)(1)(C) makes nondischargeable tax liabilities which the debtor has willfully attempted to evade or defeat, it does not include willful attempts to evade or defeat "payment" as a basis for nondischargeability. To the extent that the language of the statutes is identical and in the absence of any indication that Congress intended different meanings for the phrases in the different codes, I will interpret them the same. However, because the Bankruptcy Code exception to discharge lacks the language "or the payment thereof," evidence regarding any willful attempt to evade or defeat payment of the tax is not relevant to a determination of nondischargeability. Consequently, I will disregard evidence presented by the IRS regarding debtor's alleged attempts to frustrate collection of the taxes at issue in this case.

B.

The misconduct on which the government bases its allegation of nondischargeability falls generally into three categories: (1) failure to timely file tax returns; (2) failure to report income; and (3) wrongfully claimed deductions.[5]

1. *Failure to timely file tax returns.*

 Debtor filed his 1976 tax return on November 9, 1978, his 1978 return on March 9, 1981, and his 1979 return on June 9, 1981. None of the tax returns in question was filed within the time allowed by law or within any extensions of time debtor had received from the IRS. Debtor did not file his returns until contacted by the IRS. He testified that he did not file his 1976 return on time because he was experiencing financial difficulties and did not think he owed any tax. He stated that his 1978 and 1979 returns were late because he did not want to file them until the IRS had completed its audit of his 1976 and 1977 returns, and he thought he might be entitled to carryover deductions.

I believe debtor's testimony that he was under financial pressure in 1976 through

---

3. The parties do not agree whether the IRS must prove nondischargeability by a preponderance of the evidence or by clear and convincing evidence. Because I find that the IRS has not proved nondischargeability even by a preponderance of the evidence, I need not resolve the issue.

4. Section 6653(b) provides for additions to tax "[i]f any part of any underpayment ... of tax required to be shown on a return is due to fraud...."

5. There were unreported income and numerous disallowed deductions reported in the audits that were not the subject of testimony at the trial. I will discuss only those items on which testimony was offered because they are the items on which the IRS relies for its claim of nondischargeability.

1979 and that he thought he might not owe taxes for 1976. I also believe that debtor intended to file returns for 1978 and 1979 but that he wanted to await the outcome of the audit of the previous years' returns. He did file his returns before the audit was completed on August 31, 1981 after being contacted by the IRS.

Debtor's failure to file timely tax returns was based on financial stresses he was experiencing, his incorrect belief that he did not owe taxes in 1976 and his desire to await the outcome of an audit. I do not find that his failure to file timely returns contributed to what the IRS asserts was a scheme to defraud the IRS nor that it constitutes a willful attempt to evade or defeat the tax.

## 2. *Failure to report income.*

■ In 1976 debtor failed to report $7,945 in income from a barter/exchange program in which he participated. He also did not take a small deduction related to the barter/exchange to which the IRS concluded he was entitled. He testified that he did not think that the mere receipt of credits in the program was income. He thought there would not be a taxable effect if the exchange credit was kept in the exchange and not used.

In 1976 debtor provided the barter/exchange program with a letter of advice regarding the tax treatment of barter/exchange credits. The letter stated that exchange credits kept within a business and used to acquire goods or services for a business have no tax effect because they are cancelled out by corresponding "expenses," but exchange credits removed from the business to acquire goods or services for personal use are taxable.

Debtor testified that he had received exchange credits by transferring uncollectible receivables to the barter/exchange, and hoped to get assets he could turn into cash and put back into his business. There was no evidence presented as to whether debtor used exchange credits for non-business purposes or whether at the end of the tax year the credits remained in the barter/exchange program.

The IRS disagreed with debtor's tax treatment of the exchange credits. Debtor had a theory about taxation of these items and there is no evidence that his failure to report the exchange credits as income was contrary to his theory. This theory may have been a result of debtor's negligent failure adequately to research the question, but that does not mean that debtor's failure to report this income rose to the level of fraudulent intent or a willful attempt to evade or defeat the tax.

## 3. *Deductions disallowed.*

(a) Loss from Valley Farms.

■ On his 1976 return, debtor claimed $15,350 as an ordinary loss from the operation of the Valley Farms partnership. The IRS concluded that debtor had suffered the loss, but that it was mischaracterized and should have been claimed as a $6,000 nonbusiness bad debt and a capital loss of $9,350. The IRS reached this conclusion because debtor did not provide any evidence of the existence of the partnership, the loss was actually a result of an investment in Valley Farms, Inc., and Valley Farms was not debtor's trade or business.

Debtor testified that he was a partner in a partnership that owned land and buildings on which the corporation Valley Farms, Inc., of which he was a shareholder, operated a business. He guaranteed a loan to the corporation that he was forced to pay. Debtor considered the loss an expense of the partnership.

There is no dispute that the loss was incurred; the dispute is over how the loss should be treated for tax purposes. The IRS contended that the loss should have been partly a capital loss and partly a non-business bad debt rather than an ordinary loss because the partnership did not exist. Debtor's uncontradicted testimony under oath indicated that the partnership existed. The IRS adjustment was not a result of debtor's fraud or willful attempt to evade or defeat tax, but of his failure to substantiate to the IRS's satisfaction his assertion that there was a partnership for which the loss was incurred.

(b) Lost accounts.

On his 1976, 1978, and 1979 returns debtor claimed amortization for accounts he had lost. Debtor purchased the accounts in 1972 from an accounting firm owned by debtor's brother-in-law and his partner, under a contract of sale that listed and priced each account separately. The IRS disallowed each year's deduction on the basis that the client list is a unitary asset the loss of which cannot be deducted until all accounts are lost. Because in 1979 debtor was still servicing at least one of the accounts from the list, none were deductible.

The accounts were separately priced in the contract of sale. Debtor explained that the person who drafted the contract of sale assured him that it was drafted in such a way as to allow him to write off accounts as they were lost. Debtor testified that he relied on this advice and deducted the accounts that were no longer of value to him.

The parties presented testimony that the tax law on purchase of client accounts was not entirely settled at the time debtor filed his returns and that there could be a legitimate difference of opinion as to how loss of accounts should be treated. The IRS does not argue that the accounts were not lost, but that they could not be deducted until all accounts were lost. I believe debtor's testimony that he relied on the contract drafter's assurance that the contract was drafted in such a way as to allow deduction as accounts were lost. There is no indication that his reliance was unreasonable, or that the deductions were fraudulent or taken willfully to evade the tax.

(c) Travel and entertainment.

In 1979 debtor deducted $2,910 for business travel that the IRS disallowed because debtor failed to substantiate the business purpose of the trips. The IRS also disallowed business entertainment expenses because of debtor's failure to substantiate the business purpose of the expenditures and who was entertained.

There is no dispute that the expenditures were made. Because debtor could not substantiate the business purpose of the expenditures to the IRS's satisfaction, however, the IRS disallowed them. I believe debtor's testimony that there was a business purpose for his trips to Nashville, Tennessee and Hawaii. As to the other disallowed items, the IRS did not offer or elicit any testimony, and therefore fails in its burden of proving nondischargeability.

(d) Wages to debtor's wife and children.

In 1978 and 1979 debtor claimed deductions for wages paid to his wife and four daughters. The IRS disallowed $2,355 for Mrs. Gathwright's wages in 1978 and $9,974 in 1979. It disallowed the entire amount claimed as wages paid to debtor's daughters.

Debtor did not maintain time sheets showing the hours worked by family members. His ledgers provided substantiation that the payments had been made, but did not substantiate the purpose of the payments or the number of hours worked. In 1978 debtor reported that Mrs. Gathwright had income of $4,795 but deducted as an expense $7,150 as wages paid to her, and in 1979 reported that she had $7,200 income but deducted $17,174 as her wages.

I believe debtor's testimony that his wife worked at his office and that he paid her from time to time. Debtor did not offer any specific explanation why he deducted more for his wife's salary than he claimed as income. Debtor agreed with the IRS audit adjustment reducing his deduction, thereby admitting his mistake. As discussed more thoroughly below, such an honest mistake does not constitute fraud nor show a willful and positive attempt to evade tax, necessary to deny discharge.

The IRS also disallowed deductions for wages paid to debtor's children. I believe the testimony of the four daughters that they worked at debtor's office despite their young age at the time, and that they were compensated from time to time. I also believe that debtor bought cars for Debra and Dina as compensation for past and future wages, even though neither girl was old enough to drive when the vehicles were purchased. Therefore, I do not find that debtor acted fraudulently or with the intent

to evade or defeat tax in deducting those amounts as a wage expense.

(e) Judgment deduction.

In 1979 debtor deducted in full the amount of an $18,750 judgment against him although he had not paid the judgment in full. The IRS disallowed $15,001.50, the amount not paid. Debtor testified that he felt that because the prevailing party had put a judgment lien on his property, debtor had effectively lost control of the assets to which the lien attached and therefore he could deduct the entire amount of the judgment that year. He also testified that he thought the judgment was similar to a mortgage and was therefore deductible.

Debtor deducted the full amount of the judgment either because he failed adequately to consider how the judgment should be treated or because he felt the liens effectively deprived him of his property and therefore he could consider the judgment paid. Debtor's claim of this deduction was not legally proper under either scenario; however, the evidence indicates that debtor took the deduction as a result of an honest mistake and not in an effort to defraud the IRS or to willfully attempt to evade or defeat tax.

### C.

Debtor conducted his business affairs in what can at best be characterized as a sloppy manner and at worst a negligent manner. During his testimony debtor demonstrated a lack of understanding of good business and accounting practices and of the tax laws. At the time the tax returns at issue were due and continuing until they were filed, he was under extreme financial pressure, his wife was suffering from medical problems, and he was involved in an automobile accident that adversely affected his eyesight and thus his accounting practice. As a result, he failed to consider carefully the items he reported on his tax returns, or even to file his returns in a timely fashion.

In *Spies v. United States, supra,* the Supreme Court illustrated the types of conduct from which a willful attempt to defeat or evade the tax may be inferred: keeping a double set of books, making false entries or alterations or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct the likely effect of which would be to mislead or to conceal. 317 U.S. at 499, 63 S.Ct. at 368.

The IRS has not proved that debtor engaged in any willful conduct to evade or defeat the tax. Neither has it proved that he engaged in conduct that would support a finding that he acted with fraudulent intent. Mr. Eldridge, the IRS revenue agent who conducted the audits, testified that debtor's books and records were sufficient to allow a determination of tax. Debtor did not refuse to turn over his books and records, or destroy them. He did not hide income in undisclosed accounts. Debtor agreed with certain adjustments made during the audit. His failure to timely file his returns was a result of financial, family and physical pressures as well as of his belief he did not owe tax or of his desire to await the outcome of previous years' audits. Although debtor's tax returns claimed many deductions that the IRS disallowed, and failed to report some income, they similarly failed to claim all allowable credits and deductions to which debtor was entitled, although on a much lesser scale than the improperly claimed deductions. Even considering debtor's past employment as an IRS agent and his profession as a CPA, I find that his debt to the IRS is a result of sloppy or negligent conduct, not fraudulent or willful conduct.

### CONCLUSION

I conclude that debtor's tax liability for 1976, 1978, and 1979 is dischargeable. According to Ms. Duncan of the IRS, the IRS seized $7,647.41 of debtor's assets [6] post-

---

**6.** The IRS levied three times on the bank account held by debtor's solely-owned corpora-

tion, which the IRS was able to establish was the debtor's alter ego. In addition, the IRS

discharge that was applied to what I have determined is a dischargeable debt. Debtor is entitled to a return of that amount plus prejudgment interest at the federal judgment rate.[7]

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Fed. R.Civ.P. 52, and they shall not be separately stated.

Plaintiff is directed to submit a judgment order in accordance with this opinion.

---

received $715.00 as the value of office furniture in debtor's accounting office. There is no evidence that Mrs. Gathwright, who is jointly liable for the taxes, had an interest in the account or the furniture.

7. 28 U.S.C. § 1961. There is no evidence that the equities of the case require a different rate for prejudgment interest. *See Western Pacific Fisheries, Inc. v. S.S. President Grant,* 730 F.2d 1280, 1289 (9th Cir.1984).