**In re Robert C. JONES, Dona J. Jones, Debtors.**

**Robert C. JONES and Dona J. Jones, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 88–41502–7. Adv. No. 89–0223.**

United States Bankruptcy Court, D. Kansas.

June 28, 1990.

**812**

Charles S. Kennedy III, U.S. Dept. of Justice, Tax Div., Washington, D.C., for the U.S.

Joel Pelofsky, Shugart, Thomson & Kilroy, P.C., Kansas City, Mo., James P. O'Hara, Overland Park, Kan., for debtors.

Darcy D. Williamson, Topeka, Kan., Trustee.

## ORDER GRANTING SUMMARY JUDGMENT

JAMES A. PUSATERI, Bankruptcy Judge.

This matter is before the court on the defendant's motion for summary judgment on its motion for relief from stay, debtors' motion to avoid judicial liens, and debtors' adversary complaint. The United States appears by counsel Benjamin L. Burgess, Jr., and Charles S. Kennedy III. Debtors appear by counsel Joel Pelofsky and James P. O'Hara. Debtors requested oral argument, but the court has reviewed the relevant pleadings, perceives no need for argument, and is now ready to rule. Debtors' motion for argument is overruled.

## FACTS

The relevant facts are fairly simple. For years, debtors have filed federal tax returns reflecting tax liabilities but have generally failed to pay the amounts shown to be due. The United States has obtained various judgments against debtors for these tax liabilities. See *United States v. Jones*, 699 F.Supp. 248, 249 (D.Kan.1988) (No. 87–2179–O, order granting partial summary judgment). In addition, the government intervened in a state court foreclosure action against debtors' Kansas home and participated in the distribution of the foreclosure sale proceeds. See *McDaniel v. Jones*, 235 Kan. 93, 679 P.2d 682 (1984). On February 12, 1986, the government obtained an order setting aside as fraudulent debtors' 1963 or 1964 transfer of some Missouri lake property to Robert Jones' parents. *United States v. Jones*, 631 F.Supp. 57 (W.D.Mo.1986).

In 1963 and 1964, debtors experienced significant financial difficulties. Their home was sold through foreclosure. Robert Jones' law partner Gene McDaniel obtained a loan and mortgage to allow debtors to redeem their home and took title to the property, but debtors paid all the loan charges, continued to live in the home, made the loan payments, and paid all other ownership expenses. During the same period, some of the mortgagees of the Missouri property were threatening to foreclose. Robert Jones' parents paid off the complaining Missouri mortgagees and title to that property was placed in their names, possibly with the understanding that they would hold the property in trust for debtors' son. Debtors continued to pay all the ownership expenses for this property as well.

In 1980, McDaniel sued to evict debtors from their home, but was ultimately found

to have only an equitable mortgage rather than ownership. In the course of this proceeding, both debtors testified that title to their home had remained in McDaniel's name so that they could avoid paying their tax liabilities. 235 Kan. at 111–12, 679 P.2d 682. As noted above, the government intervened in this suit and received a share of the proceeds from the subsequent foreclosure sale. Debtors redeemed their home following this sale.

On September 30, 1988, the government obtained a judgment of $280,667.34 plus interest from March 1, 1988, against debtors for income taxes for the years 1967, 1968, 1969, 1973, 1975, 1976, 1977, 1978, 1979, and 1980. See *United States v. Jones,* 699 F.Supp. 248 and September 30, 1988, journal entry of final judgment in that case. The government was also authorized to foreclose its lien on debtors' home. The United States District Court for the District of Kansas rejected debtors' claims that various payments and levies against property had not been credited toward the government's judgments against them and that K.S.A. 60–2414(*o*) prevented the government from foreclosing on their home a second time. 699 F.Supp. at 249–52 and August 26, 1988, memorandum and order denying reconsideration of that order. Debtors did not appeal these orders. Meanwhile, on January 6, 1986, the government had assessed debtors' income taxes for 1984, thus definitely establishing its tax lien under 26 U.S.C. § 6321. As of the date of their bankruptcy petition, debtors owed over $9,000 in tax, penalty and interest for 1984.

Debtors filed their chapter 7 bankruptcy petition on November 22, 1988, and on May 12, 1989, filed the present adversary proceeding, seeking a determination of dischargeability, lien avoidance, and an order for an accounting. In their complaint, debtors alleged: (1) the taxes are too old to be nondischargeable under 11 U.S.C. § 523(a)(1)(A) & (B); (2) the tax liens were extinguished through merger into the judgments rendered in *McDaniel v. Jones* or *United States v. Jones,* No. 87–2179–O and the resulting judgment liens may be avoided under 11 U.S.C. § 522(f); and (3) they

were entitled to an accounting for payments they had allegedly made since 1987.

In the main case, the government had moved for stay relief to permit it to foreclose on debtors' home. The government has now moved for summary judgment on all three counts in the adversary proceeding and its stay relief motion, and debtors have responded.

## CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 56, governing grants of summary judgment, is made applicable to bankruptcy proceedings by Bankruptcy Rule 7056. F.R. Civ.P. 56 provides that this Court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering a motion for summary judgment the Court must examine all the evidence in a light most favorable to the party against whom summary judgment is sought. Summary judgment is inappropriate if an inference can be deduced from the facts which would allow the nonmovant to prevail. The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. Where different ultimate inferences may properly be drawn, the case is not one for summary judgment. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986).

The government identifies and addresses the following issues in its memorandum in support of its summary judgment motion:

"1. Are the plaintiffs' federal tax liabilities nondischargeable pursuant to Section 523(a)(1) of the Bankruptcy Code.

"2. Is the United States barred by the Kansas foreclosure statute from re-selling the personal residence of the plaintiffs.

"3. Do tax liens merge into the judgment lien that arises when the United States reduces assessments to judgment.

"4. Have the tax liens that form the basis of the United States' claim attached to the plaintiffs' personal residence.

"5. Are the plaintiffs entitled to an accounting of any amounts credited to their tax liabilities since 1987."

Debtors have addressed only the first, second and fifth of these issues in their brief in opposition to summary judgment, perhaps conceding the other two. Nevertheless, the court will address all five issues. In addition, the government's claim includes 1984 taxes as well as those at issue in *United States v. Jones*, No. 87–2179–O. For some of these issues, the facts necessitate a different analysis for these taxes.

*1. Dischargeability*

The first issue is the most difficult involved in this case. The government concedes the taxes that form the basis for its claim are too old to be nondischargeable under § 523(a)(1)(A) or (B). However, it argues they are nondischargeable under § 523(a)(1)(C), which reads in pertinent part:

"(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

"(1) for a tax ...—

"....

"(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax."

The government argues debtors willfully attempted to evade the collection of their tax liabilities by fraudulently transferring the Missouri lake property to Robert's parents and by leaving title to their home in McDaniel's name while they actually owned, used, and paid for the properties, so that they could avoid paying their taxes. ▮ Debtors do not contest these facts, but dispute only the law as applied to those facts. Initially, they note that failure to pay taxes, standing alone, is not enough to make the taxes nondischargeable under § 523(a)(1)(C). *In re Edmiston*, 36 B.R. 1, 4 (Bankr.D.Kan.1982). However, in that case, the government did not allege or stipulate to any facts other than nonpayment.

Here, in addition to nonpayment, the government is relying on debtors' concealment of their ownership of two pieces of real estate with the intent to avoid paying taxes. Finally, debtors rely on the decision in *In re Gathwright*, 102 B.R. 211 (Bankr.D.Or.1989) where the court held § 523(a)(1)(C) did not apply to willful attempts to evade or defeat the collection of taxes.

In *Gathwright*, the court agreed to an extent with the government that this Bankruptcy Code provision should be interpreted the same as similar language in the Internal Revenue Code, 26 U.S.C. § 7201(a). However, the court went on to reason:

"Under section 7201(a), which provides that it is a felony to 'willfully attempt[ ] in any manner to evade or defeat any tax imposed by [Title 26] or the payment thereof,' the IRS must prove a willful and positive attempt to evade or defeat tax. *Spies v. United States*, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). Although section 523(a)(1)(C) makes nondischargeable tax liabilities which the debtor has willfully attempted to evade or defeat, it does not include willful attempts to evade or defeat 'payment' as a basis for nondischargeability. To the extent that the language of the statutes is identical and in the absence of any indication that Congress intended different meanings for the phrases in the different codes, I will interpret them the same. However, because the Bankruptcy Code exception to discharge lacks the language 'or the payment thereof,' evidence regarding any willful attempt to evade or defeat payment of the tax is not relevant to a determination of nondischargeability."

102 B.R. at 213. While such reasoning might carry some logical force in other contexts, this court must respectfully disagree with its application here.

▮ First, the court believes the modifying phrase "in any manner" is sufficiently broad to include willful attempts to evade taxes by concealing assets to protect them from execution or attachment as these

debtors did. Second, the court has some misgivings about using a criminal statute as the basis for such a restrictive reading of a civil one, even though the exceptions to discharge are to be strictly construed in favor of debtors. Third, the court believes this interpretation of the phrase at issue here would render it superfluous. The first part of § 523(a)(1)(C) makes a tax debt nondischargeable if the debtor has filed a fraudulent return with respect to it. If evading or defeating collection or payment of a tax does not count, this court is hard-pressed to conceive how a debtor might willfully attempt to evade or defeat a tax without also filing a fraudulent return.[1] Fourth, a standard English dictionary indicates that in connection with taxes, "evade" means "to fail to pay." *Webster's New Collegiate Dictionary*, p. 395 (*G. & C. Merriam Co. 1975 ed.*). Finally, the court believes the legislative history of the equivalent provision of the Bankruptcy Act, § 17(a)(1)(d), provides a further basis for rejecting the *Gathwright* rationale. Before 1966, debts for taxes were not affected by a discharge in bankruptcy at all. In discussing the 1966 amendment to § 17(a)(1), Congress said, "Since the purpose of this bill is to provide relief for the financially unfortunate and not to create a tax evasion device, [§ 17(a)(1)] specifically excepts from discharge taxes ... with respect to which [the bankrupt] had made a false or fraudulent return or which he had otherwise attempted to evade." H.R. House Report No. 687, 89th Cong. 1st Sess., as quoted in 1976 Collier Pamphlet Edition of Bankruptcy Act and Rules, Part 1, p. 58 (1976). If willful attempts to evade or defeat the collection of taxes do not satisfy § 523(a)(1)(C), then these debtors have discovered a most lucrative device, one which would allow them to defeat the collection of over $300,000 in taxes.

█ The court concludes the government's claim for taxes up to 1980 is nondischargeable because of debtors' efforts to evade the taxes by placing title to their home and the Missouri lake property in the names of others. Although debtors' ownership of their home was established in *McDaniel v. Jones*, 235 Kan. 93, 679 P.2d 682, before their 1984 income taxes were due, those taxes were assessed before their 1963 or 1964 transfer of the lake property was set aside in *United States v. Jones*, 631 F.Supp. 57 (W.D.Mo.), and the court concludes this is sufficient to render the 1984 taxes nondischargeable as well.

### 2. Second foreclosure statute

█ The second issue is much simpler. In *United States v. Jones*, No. 87–2179–O (D.Kan.), debtors argued that K.S.A. 60–2414(*o*) prevented the government from foreclosing again on their home for the same debts involved in *McDaniel v. Jones*. The district court ruled against them on this issue with regard to taxes through 1980, *United States v. Jones*, 699 F.Supp. at 250–51, and that ruling became final on September 30, 1988. Debtors did not appeal the ruling and may not assert their argument again here in this later suit against the government. Debtors claim res judicata should not apply because this proceeding is one to determine the dischargeability of a debt rather than one to obtain a judgment and foreclose a lien, but the court is convinced collateral estoppel or issue preclusion certainly should apply. Debtors raised precisely this issue before the district court in the government's foreclosure suit, that court ruled against them on the issue, and that ruling was necessary to the judgment authorizing the government to foreclose on debtors' home.

As indicated, the 1984 taxes were not involved in *United States v. Jones*, No. 87–2179–O, but they were clearly not involved in *McDaniel v. Jones*, either, since the Kansas Supreme Court's opinion was filed in 1984. Debtors' second foreclosure argument therefore has no possible application to the 1984 taxes.

### 3. Merger of tax liens

█ The court is uncertain whether debtors intend to contest the government's

---

1. Not filing a required return is covered by § 523(a)(1)(B)(i), so someone who was required to but filed no return rather than a fraudulent one would be covered by that section.

third issue since they have not addressed it in their brief, but the court is convinced the government's argument is correct. As recently as 1986, the Sixth Circuit said the assertion was well settled that tax liens continue to exist independent of judgments based on the tax liability which gave rise to the liens. *United States v. Bank of Celina*, 823 F.2d 911, 914 (6th Cir.1986). The court quoted a Second Circuit case which said:

" '[T]ax assessment liens, unlike most liens under state law, continue to exist independently of the suit or judgment which has extended their existence.... The assessment lien does not merge into the judgment, as would an attachment lien, for example; the judgment is merely one way in which the underlying tax liability remains enforceable, and therefore the judgment serves merely as a measuring rod for the life of the lien.' "

823 F.2d at 914 (quoting *United States v. Hodes*, 355 F.2d 746, 749 (2d Cir.1966), cert. dismissed, 386 U.S. 901, 87 S.Ct. 784, 17 L.Ed.2d 779 (1967)). Thus, under this well-settled rule, debtors may not avoid the liens for taxes through 1980 on their home because the liens did not merge into any judgments and become judicial liens. While this same rule would apply to the 1984 tax lien, the court has not been informed of any judgment based on that lien, so debtors' argument appears to have no bearing on that lien at all.

### 4. Attachment of liens to house

■ The court is likewise uncertain whether debtors intend to contest the government's fourth issue since they have not addressed it in their brief. However, to the extent debtors contend the tax liens have not attached to their home because it was previously foreclosed upon, they are raising the claim too late with respect to the taxes through 1980. The United States District Court has already ruled in *United States v. Jones*, No. 87–2179–O (September 30, 1988, journal entry), that the government may foreclose its liens on the home for taxes through 1980. Any attack on the attachment of those liens to the home is now barred because debtors should have

litigated it in that case since the attachment of the liens was a necessary prerequisite to the government's right to foreclose on the home. Of course, the earlier foreclosure could have no effect on the attachment of the 1984 tax lien which was not involved in that foreclosure.

### 5. Accounting

■ Finally, debtors claim they have "paid substantial sums" to the government since 1987 but have never received a "complete accounting." In *United States v. Jones*, 699 F.Supp. at 250, the court said:

"The United States submitted copies of the judgments and a declaration regarding the amount outstanding on the judgments with its memorandum supporting its summary judgment motion. The declaration details yearly assessments, penalties, interest rates, and payments. In response, the Jones' memorandum opposing summary judgment asserts that various payments and levies against property are not credited in the assessment. No evidence is submitted to support this assertion, and the assertion itself is insufficient to avoid summary judgment on the issue of satisfaction of the judgments. *See Anderson* [*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505,] 91 L.Ed.2d [202,] 212 [1986]."

The situation is identical here, and with regard to the taxes through 1980, the district court's order bars reconsideration of the matter by this court. Debtors have provided no evidence of any payments they have made, substantial or otherwise, whether credited by the government or not. In response to a motion for summary judgment, debtors are obliged to come forward with some evidence to support their claim for an accounting. This court adopts the district court's reasoning as being applicable to the 1984 taxes as well.

For these reasons, the court concludes the government's entire claim for taxes is nondischargeable, its tax liens are not avoidable, and debtors are not entitled to an accounting. Consequently, the government is entitled to stay relief so it may

proceed to foreclose its liens on debtors' home.

IT IS SO ORDERED.