**In re Jerry L. SUMPTER, Debtor.**

**UNITED STATES of America, Plaintiff/Appellee,**

v.

**Jerry L. SUMPTER, Defendant/Appellant.**

**No. 91–CV–10231–BC.**

United States District Court, E.D. Michigan, Northern Division.

March 9, 1994.

**910**

Karen A. Smith, Dept. of Justice, Tax Div., Washington, DC, Michael J. Hluchaniuk, Asst. U.S. Atty., Bay City, MI, for plaintiff/appellee.

Richard G. Smith, Cheboygan, MI, for debtor-defendant/appellant.

Jerry L. Sumpter, Cheboygan, MI, pro se.

## MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

CLELAND, District Judge.

### I. INTRODUCTION

This case is before the Court on Jerry Sumpter's appeal from the bankruptcy court's determination, on summary judgment, that his liabilities owed to the Internal Revenue Service were nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C) and that, therefore, these liabilities should be excepted from the discharge issued under 11 U.S.C. § 727(a). For the reasons stated herein, the judgment is affirmed.

### II. PROCEDURAL POSTURE

On September 27, 1989, Jerry and Santina Sumpter filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In addition to seeking discharge of various debts, they also sought discharge of a debt to the Internal Revenue Service ("I.R.S.") for unpaid income taxes, interest and penalties. In December of 1989, the Government brought a four-count complaint against the Sumpters seeking (1) a denial of discharge pursuant to Bankruptcy Code §§ 727(a)(4), (a)(2), and (a)(5) (counts I–III) and (2) a determination pursuant to Bankruptcy Code § 523(a)(1)(C) that their federal income tax liabilities are not dischargeable (count IV). Cross motions for summary judgment were filed on all counts in September 1990. On December 6, 1990, the bankruptcy court dismissed count II against the Sumpters and denied the I.R.S.'s motions for summary judgment against Santina Sumpter on all counts. However, the court granted the I.R.S.'s motion on Count IV (§ 523(a)(1)(C)) against Jerry Sumpter, declaring that the I.R.S. debt was not dischargeable. Thereafter, Jerry Sumpter timely filed a motion for reconsideration of the court's order. In July of 1991, after the bankruptcy court's denial of his motion for reconsideration, Jerry Sumpter filed notices of appeal in this Court.[1]

On November 7, 1991, having never received a transmittal of the record on appeal, this Court dismissed without prejudice Jerry Sumpter's previously filed appeals (civil case numbers 91–CV–10231, 10235). Subsequently, Jerry Sumpter moved for this Court to reinstate these appeals. The motion was ultimately granted and an order was issued on September 30, 1993, reinstating these appeals under a singular case number (91–CV–10231–BC). This sole appeal is now before the Court.[2]

### III. FACTS

In late 1970, the Sumpters created trusts naming their two children as the sole benefi-

---

1. Apparently, due to confusion as to whether his attorney had in fact filed a notice of appeal, appellant filed his own notice of appeal (number 91–10231 was filed by attorney Donald Cadotte; number 91–10235 was filed by Jerry Sumpter, who is a licensed attorney).

2. The issue of the dischargeability of Santina Sumpter's debt to the I.R.S. was presented before the bankruptcy court in a trial on the merits in March, 1991. The bankruptcy court determined that, pursuant to § 523(a)(1)(C) of the Bankruptcy Code, Mrs. Sumpter's debt did not qualify for discharge. *See United States v. Sumpter*, 136 B.R. 690 (Bankr.E.D.Mich.1991). Judgment was entered on July 9, 1991. Santina Sumpter's appeal of this decision was affirmed by this Court in a separate order.

ciaries. (Tr 27–28)[3]. The trust document that created both of the trusts provided that the trustees could not make loans from the trust to the settlors, Mr. and Mrs. Sumpter. Three different trustees have served during the life of the trusts. All three have been either family, friends or neighbors of Mr. and Mrs. Sumpter. (Tr 156–59). The trusts have assets totalling over $190,000.[4] The only explanation given as to how the trusts accumulated these assets was that the trusts own the building in which Mr. Sumpter's law firm or professional corporation ("P.C.") is located and that the P.C. pays rent to the trusts. (Tr 165). From the creation of the trusts until the time of the trial in this matter, Mr. Sumpter's P.C., of which he owns virtually all of the stock, received 12 loans from the trusts totalling $257,900.

On August 25, 1986, the I.R.S. made an assessment for joint and several income tax liabilities against Mr. and Mrs. Sumpter[5] for tax year 1985. Thereafter, additional assessments were made against the Sumpters. On December 8, 1986 an assessment was made for tax year 1984 and on August 19, 1987 an assessment was made for tax years 1981 and 1982. By notices and demands dated the dates of each of the assessments, the Sumpters were notified of said assessments. (Tr 83–88).

On January 12, 1988, within a short time after second notices of the federal tax liabilities were sent by the IRS (notices were sent December 21, and 28, 1987; Tr 86) a mortgage (R. 23) was filed (Tr 40, 133) with respect to six parcels of property owned by the Sumpters, naming the children's trusts as the mortgagees and the Sumpters as mortgagors. In exchange for the mortgage on the six pieces of real property, the trust loaned the Sumpters $90,000. On April 7, 1988, the I.R.S. sent by certified mail, return receipt requested, a final demand for pay-

ment to Mr. and Mrs. Sumpter (Tr 86–88). Mrs. Sumpter signed the green card noting receipt of such notice on April 12, 1988. (Tr 87). On April 23, nine days after receiving this notice, Mr. and Mrs. Sumpter transferred (i.e. deeded) the six parcels of property into the trusts. (Tr 25–37, 133).[6] On April 26, 1988, the trust agreement that allegedly created the trusts in the late 1970's was recorded for the first time. (Tr 34–40).

At her trial, Mrs. Sumpter testified that $40,000 of this was used to pay off a loan that was previously secured to fund Mr. Sumpter's business (Tr 137); $12,000 went to pay off an undocumented loan from an employee of the P.C. (Tr 150); and the remaining $38,000 was transferred to the P.C. (Tr 137). There is no evidence that any promissory note was ever issued by the P.C. to Mr. or Mrs. Sumpter for the monies they gave the P.C. At this time, the Sumpters' liabilities were in excess of their assets. Additionally, the Sumpters had only one personal bank account with an average balance of $100–$200 "... for groceries and stuff ..." and no other visible means of support. (Tr 153–54).

## IV. ISSUES

1) Whether the bankruptcy court erred in holding that even fraudulent transfers intended to thwart the government's collection actions can constitute an attempt to "evade or defeat" a tax under 11 U.S.C. § 523(a)(1)(C).

2) Whether the bankruptcy court erred in finding that, as a matter of law, the tax liabilities of Jerry Sumpter are nondischargeable under 11 U.S.C. § 523(a)(1)(C) due to his willful attempt to evade or defeat such liabilities.

## V. STANDARD OF REVIEW

 On review of an order granting summary judgment the appellate court ap-

---

**3.** "Tr" refers to the transcript of Santina Sumpter's trial, located at Record 2 ("R.").

**4.** Relying on trial exhibit 4 (the Sumpters' Statement of Financial Condition, which was signed by the Sumpters), the bankruptcy court found that, as of May 6, 1988, the value of the trust was $190,000. This exhibit, while not included in the designated documents, is not objected to by either party.

**5.** As stated, Mrs. Sumpter's liabilities are not at issue in this appeal.

**6.** The properties were conveyed to the trust in payment of the indebtedness secured by the mortgages—in essence, deeds in lieu of foreclosure.

plies the same standard as the trial court. Under Fed.R.Civ.P. 56, summary judgment should be entered only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987), *citing, Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The existence of some factual dispute does not defeat a properly supported motion for summary judgment; it is required that there be no genuine issue of *material* fact. The burden placed upon the movant for summary judgment is to show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552. The non-moving party must show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989). The non-moving party must show that there is sufficient evidence for a jury to return a verdict in its favor. *Street,* at 1476. The non-moving party must also present affirmative evidence on critical issues. *Street,* at 1477. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Thus, it is this Court's role to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Id.* at 587, 106 S.Ct. at 1356.

## VI. DISCUSSION

■ 11 U.S.C. § 523(a)(1)(C) provides in pertinent part:

### § 523 Exceptions to discharge

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

. . . .

(C) with respect to which the debtor made a fraudulent return *or willfully attempted in any manner to evade or defeat such tax;*

*Id.* (emphasis added). A party seeking an exception to the bankruptcy discharge of the debtor (i.e. the government) must establish the elements for such an exception by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 287–88, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991).

### A. FRAUDULENT TRANSFERS

In its motion, the government argued, *inter alia,* that Mr. Sumpter attempted to evade or defeat taxes he owed under § 523(a)(1)(C) by fraudulently conveying real estate to his children's trust before the I.R.S. could levy on the property. On appeal Mr. Sumpter contends that even allegedly fraudulently transfers intended to thwart the government's collection actions do not constitute an attempt to "evade or defeat" the tax under § 523(a)(1)(C). In support of this argument, appellant relies on *In re Gathwright,* 102 B.R. 211 (Bankr.D.Or.1989), where the court held that § 523(a)(1)(C) did not apply to willful attempts to evade or defeat *the collection* of taxes. In *Gathwright,* the court stated that:

Under § 7201(a), which provides that it is a felony to 'willfully attempt[ ] in any manner to evade or defeat any tax imposed by [Title 26] or the payment thereof,' the IRS must prove a willful and positive attempt to evade or defeat tax.... Although sections 523(a)(1)(C) makes nondischargeable tax liabilities which the debtor has willfully attempted to evade or defeat, it does not include willful attempts to evade or defeat 'payment' as a basis for nondischargeabili-

ty.... [B]ecause the Bankruptcy Code exception to discharge lacks the language 'or the payment thereof,' evidence regarding any willful attempt to evade or defeat payment of the tax is not relevant to a determination of nondischargeability. Consequently, I will disregard evidence presented by the IRS regarding debtor's alleged attempt to frustrate collection of the taxes at issue in this case

*Id.* at 213. The bankruptcy court in the instant case, relying on *In re Jones,* 116 B.R. 810, 815 (Bankr.D.Kan.1990), rejected the *Gathwright* court's holding. (R. 3, Transcript of summary judgment hearing, p. 62). As the *Jones* court noted, if § 523(a)(1)(C) is construed to mean that only debtors who commit affirmative acts of tax evasion (e.g. filing a fraudulent tax return or keeping two sets of books) are disqualified from discharge, then debtors who elude taxes through acts of omission would be left with a "lucrative device" for avoiding payment. *Id.* at 815. It is not likely that the framers of the Bankruptcy Code intended such a result.

██ This court has recently concluded that a civil (and not a criminal) definition of "willfully" must be applied to § 523(a)(1)(C). In *United States v. Toti,* 149 B.R. 829 (E.D.Mich.1993), the court rejected the suggestion that § 523(a)(1)(C) should be interpreted in a manner consistent with § 7201. The court instead held that "the proper definition of 'willfully attempted to evade' in the context of an 11 U.S.C. § 523(a)(1)(C) discharge case is that found in other civil tax cases—voluntary, conscious and intentional." Id. at 834. Other courts have reached the same conclusion. *See e.g., United States v. Hedgecock,* 160 B.R. 380 (D.Or.1993); *Berzon v. United States,* 145 B.R. 247 (Bankr. N.D.Ill.1992); *Sells v. U.S.,* 92–1 U.S.T.C. CCH ¶ 50,070, 1991 WL 328039 (D.Col.1991). These cases are persuasive as they adopt a plain reading of an unambiguous statute. Thus the Court holds that § 523(a)(1)(C)'s modifying phrase "in any manner" is expansive enough to include evading or defeating *collection or payment* of a tax. *In re Jones,* 116 B.R. 810, 815 (Bankr.D.Kan.1990). Accordingly, if proved, the transfers in the instant case—allegedly intended to thwart the government's collection of taxes owed—

would constitute a willful attempt to evade or defeat such taxes under § 523(a)(1)(C).

## B. 11 U.S.C. § 523(a)(1)(C)

The government, in its attempt to show a willful attempt to evade or defeat taxes owed, relied on appellant's own deposition testimony. The specific exchange relied on by the bankruptcy court is as follows:

Q. (by the government) Was the reason for transferring the properties to the trust to protect them from the Federal Tax liens?

A. (by appellant) I think the real reason was to discharge the mortgage and to provide what equity we could to discharge the mortgage *for fear that it would be—a lien would be imposed against it and turn into a rats nest.*

Q. So that was—well, was that something that you considered or thought of at the time that you were transferring the property and that is well, I could pay off this mortgage and in addition to that I could keep the liens from attaching to the properties?

A. I couldn't pay off the mortgage. I had no money. The only way I could pay off the mortgage was with the equity in the property.

Q. The question is *was one of the purposes or an additional purpose for transferring the properties to prevent the Federal Tax liens from attaching to the properties.*

A. *Yes.*

R. 5, deposition of Jerry Sumpter, p. 50–51 (emphasis added). Based on this testimony, the bankruptcy court determined that appellant willfully attempted to evade or defeat a tax under § 523(a)(1)(C). R. 3, hearing on motion for summary judgment, pp. 66–67. The court's reasoning was as follows:

... Willfully attempted [under § 523(a)(1)(C)] obviously includes some kind of mental state. It's not—it doesn't say did an act which in retrospect look what it caused. [Or that the debtor] did in fact evade a tax or defeated a payment of the tax. *The question is what was the*

*debtor's intent.* Willful means intentional. Intentionally attempted to evade or defeat the tax.

The debtor answers that question yes. One of the reasons I did this deed was to defeat the tax. Therefore the Government's motion for summary judgment on [the § 523(a)(1)(C) Count] is granted as to Jerry Sumpter

*Id.* (emphasis added). Appellant argues that the bankruptcy court erred because it failed to consider the *value* of the properties that he (along with his wife) transferred to the trust. If the value of the properties did not exceed the amount of the mortgage the I.R.S., according to appellant, "lost nothing in the conveyance." Appellant's Brief 8. Appellant further maintains that if this were in fact the case (or, alternatively, if he reasonably believed it to be the case), that his transfer—which admittedly was effected with an intent to avoid the tax lien—was somehow not committed with an intent to evade or defeat the tax. Appellant's Brief 8. Appellant cites no authority in support of this unique construction of what appears on its face to be an unambiguous statute.

 The Court rejects appellant's argument as it is spurious. As stated, § 523 provides for an exception to discharge if the debtor "willfully attempted in any manner to evade or defeat" a tax. This provision does not require, as appellant suggests, that an attempt to evade or defeat a tax to be *successful;* but only that it was "willful." Although the word "attempt" is not defined by the Bankruptcy Code, in the non-criminal context it generally means an intent combined with an act falling short of the thing intended. *Black's Law Dictionary* (Sixth Ed.1990). Moreover, even in the criminal context, appellant's argument of "factual impossibility" would be without merit. In the criminal law, factual impossibility denotes conduct where the objective is illegal but a circumstance unknown to the actor prevents him from bringing it about. *United States v. Conway,* 507 F.2d 1047, 1050 (5th Cir.1975). The classic example is the thief who picks an empty pocket. *Id.* However, "factual impossibility may fall away as a defense to an attempt charge when adequate proof of in-

tent to commit a specific crime exists." *United States v. Johnson,* 767 F.2d 673, 675 (10th Cir.1985).

 In the instant case, the statute requires only that the government prove that appellant "willfully attempted in any manner to evade or defeat" the taxes he owed. § 523(a)(1)(C). Appellant concedes that his purpose in transferring the properties to the trust was to prevent the Federal Tax liens from attaching to the properties. This evidence supports the finding that, irrespective of the value of the properties that were transferred, appellant willfully attempted to evade or defeat taxes he owed under § 523(a)(1)(C). Accordingly, summary judgment on this count was proper.

## VII. CONCLUSION

The bankruptcy court determined that, as a matter of law, appellant had willfully attempted to evade or defeat taxes he owed when he (along with his wife) transferred properties to his children's trust. 11 U.S.C. § 523(a)(1)(C). For the aforementioned reasons, this Court holds that the summary judgment was proper. Accordingly, the bankruptcy court's decision is affirmed.

IT IS SO ORDERED.