**In re Jerry Lee LEWIS, Debtor.**

**Jerry Lee LEWIS, Plaintiff,**

**v.**

**UNITED STATES of America INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 88–28250–B(je).
Adv. No. 92–0351.**

United States Bankruptcy Court, W.D. Tennessee, W.D.

Dec. 28, 1992.

Michael J. Martineau, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, William W. Siler, Asst. U.S. Atty., Memphis, TN, for defendant.

Norman P. Hagemeyer, Memphis, TN, for debtor.

George W. Emerson, Jr., Memphis, TN, Chapter 7 Trustee.

## MEMORANDUM OPINION ON DEBTOR'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF TAX OBLIGATIONS

WILLIAM H. BROWN, Bankruptcy Judge.

This complaint was tried on October 26 and 27, 1992, after which trial the Court took the matter under advisement. The Court has now reviewed the evidence presented at trial, including exhibits and deposition testimony, and this memorandum opinion contains the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052. This is a dischargeability complaint which is core pursuant to 28 U.S.C. § 157(b)(2)(*l*).

### HISTORY OF PROCEEDING

The debtor filed a voluntary Chapter 7 petition in this district on November 8, 1988, which petition listed the Internal Revenue Service as a creditor for personal income taxes in an "exact amount unknown" to the debtor. The debtor received a discharge but of course tax obligations as described in § 523(a)(1) were excepted from discharge. The debtor filed a prior adversary proceeding to determine dischargeability of federal tax obligations for certain tax years, and discovery and pretrial actions were taken in that earlier adversary proceeding. Upon the debtor's motion, the Court permitted the debtor to voluntarily dismiss that adversary proceeding; however, the Court imposed a requirement that the debtor pay to the United States of America (hereinafter "United States") a sum to partially compensate the government for its expenses related to that earlier adversary proceeding, in the event that the debtor chose to refile an adversary proceeding concerning federal tax dischargeability. The debtor did refile the present adversary proceeding on April 8, 1992, after paying the United States the amount ordered by the Court. This adversary proceeding has been answered by the United States and several pretrial matters have been disposed of in this adversary proceeding.

The Court granted the United States' motion for partial summary judgment as to the tax years 1985 and 1986, the Court having found that, while the plaintiff did not plead in his complaint for a determination of dischargeability of those particular tax years, the United States in its answer put those tax years at issue by denying that those tax years were dischargeable. Moreover, no issue was presented by the debtor asserting that those two tax years did not fall within the automatic exception from discharge under § 523(a)(1)(A). That exception to discharge refers to taxes given priority status in § 507(a)(7), and § 507(a)(7)(A)(i) includes income taxes for which a return is due within three years of the bankruptcy petition date. The Court in granting partial summary judgment held that, in this particular case, the federal income tax returns of the debtor for the tax years 1985 and 1986 were due to be filed on April 15, 1986, and April 15, 1987, respectively, which tax return due dates were within the three years of the filing of the Chapter 7 petition on November 8, 1988. The debtor presented no dispute of facts on these tax years, and the Court granted the United States' motion for partial summary judgment holding that the income taxes for the tax years 1985 and 1986 were excepted from discharge pursuant to § 523(a)(1)(A). *See* Order Granting Partial Summary Judgment, dated October 9, 1992.

The trial involved the tax years 1977, 1978, 1979, 1980, 1982, 1983, and 1984, and the issue of whether the tax obligations arising from those tax years were excepted from discharge under § 523(a)(1)(C). Section 523(a)(1)(C) provides that a discharge under § 727 does not discharge an individual debtor from a debt for taxes "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C).

Prior to trial, the Court denied the plaintiff/debtor's motion to amend his complaint, which motion sought to have the Court ultimately declare, pursuant to 26 U.S.C. § 6502, that the time limit for collection of the tax obligations arising from the tax years 1978 through 1982 had expired and that collection was time barred. In its order denying the plaintiff's motion to amend the complaint, the Court found that the statute of limitations on the collection of unpaid federal income tax liabilities of the plaintiff for the tax years 1978, 1979, 1980 and 1982 had not expired, pursuant to 26 U.S.C. § 6502(a) in conjunction with 26 U.S.C. § 6502(h). *See* Order Denying Plaintiff's Motion To Amend Complaint, dated July 30, 1992.

Further, prior to trial, the Court entered an order striking the plaintiff's jury demand, the Court having found and concluded that the plaintiff, as a Chapter 7 debtor, was not entitled to a jury trial on the issue of dischargeability of the unpaid federal income tax liabilities. *See, Matter of Hallahan,* 936 F.2d 1496, 1507–08 (7th Cir. 1991); *In re Choi,* 135 B.R. 649, 650 (Bankr.N.D.Cal.1991); *In re Lion Country Safari, Inc.,* 124 B.R. 566, 572 (Bankr. C.D.Cal.1991); *In re Bailey,* 75 B.R. 314, 316 (M.D.Tenn.1987); and *In re Schmid,* 54 B.R. 520 (Bankr.E.D.Pa.1985). *See* Order Striking Plaintiff's Jury Demand, dated July 30, 1992.

The proof at this trial included testimony, documentary exhibits, deposition testimony, and portions of testimony from a prior criminal trial in which the debtor was a defendant who was found not guilty as to criminal violations involving one tax year. The Court by its order dated August 27, 1992, held that the testimony of some witnesses given at the October, 1984, criminal trial of the plaintiff in *United States of America v. Jerry Lee Lewis,* case number 84–20020–M (W.D.Tenn.1984) was admissible in evidence in this civil trial under the exception to the hearsay rule for prior testimony contained in Federal Rule of Evidence 804(b)(1). Some of that testimony was used by both the United States and the plaintiff.

At the trial of this proceeding the debtor did not testify, the representation having been made in pretrial hearings by the debtor's counsel that the debtor was concerned about potential Fifth Amendment privileges, in view of the fact that the debtor had been indicted and tried by the United States for only one tax year. The debtor was, however, present for the entire trial and his attorney did produce witnesses and proof on behalf of the debtor.

A pretrial issue, which could have been more properly brought as a motion *in limine,* arose the first morning of the trial. The debtor's counsel asserted that the United States had the burden of proof, to which the government agreed, and of course the parties understood that the standard of proof under *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), for all § 523(a) exceptions is the preponderance of the evidence standard. However, the debtor's counsel asserted that the debtor as the plaintiff did not have to present any proof but rather could rely upon the government to go forward with initial proof showing that the taxes at issue were excepted from discharge. The Court ruled that the plaintiff had a burden of going forward to make a prima facie showing of dischargeability but that, of course, the government had the ultimate burden of proof and persuasion on the nondischargeability of the taxes at issue. *See* Federal Rule of Evidence 611(a) made applicable to bankruptcy proceedings by virtue of F.R.B.P. 9017 and Federal Rule of Evidence 1101(a). The plaintiff did proceed to produce evidence, at the conclusion of which the Court reserved ruling on the government's motion for a judgment as a matter of law, the Court having found that the plaintiff had established a prima facie case. The ruling of the Court contained in this memorandum opinion will moot the necessity of ruling on the government's motion made at the conclusion of the plaintiff's proof, the Court now being in a position to rule on the merits of both the plaintiff's and defendant's proof so as to sustain the government's position and to except the tax obligations for the years at issue from discharge under 11 U.S.C. § 523(a)(1)(C).

## DISCUSSION:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

As stated, the issue presented in this trial was one of whether the debtor was entitled to a discharge for the tax years 1977, 1978, 1979, 1980, 1982, 1983, and 1984, and more specifically whether the United States proved by a preponderance of the evidence with respect to each of those tax years that "the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). The proof in this trial did not involve failure of the debtor to file a tax return. *See* § 523(a)(1)(B)(i). Also, the proof did not involve allegations by the government that the debtor made a fraudulent return. Rather, the proof was directed toward the debtor's willful attempts "in any manner to evade or defeat" the tax obligations at issue. 11 U.S.C. § 523(a)(1)(C).

It was the government's position that the unpaid federal income tax liabilities and statutory additions due for the tax years at issue are nondischargeable because the debtor willfully attempted to evade or defeat the taxes due for those years. The debtor, on the other hand, attempted to prove that he had not willfully attempted to either evade or defeat those taxes. The proof in this proceeding established that the debtor had filed tax returns for the years at issue, although some of those returns were filed with extensions. However, the proof established that upon a filing of returns, those returns were not always accompanied by a full payment of the tax obligations shown on the returns.

Kevin Nicholas, a revenue officer with the Internal Revenue Service ("IRS") since 1973, testified that he became responsible for the collection of the debtor's taxes in early 1978, when he was with the collection division of the IRS. Mr. Nicholas is on the civil side of the IRS, but he was the individual who forwarded a referral report on IRS Form 3212 of potential fraud to the criminal investigation division of the IRS. Tr. Ex. 16. Mr. Nicholas testified at some length about his efforts to collect Mr. Lewis' taxes in various tax years and of his negotiations both with Mr. Lewis and Mr. Lewis' representatives. Mr. Nicholas met with accountants, business managers, and others acting on behalf of Mr. Lewis in an effort to negotiate a resolution of the disputes between the IRS and Mr. Lewis. Mr. Nicholas' log reflected that he had talked with Mr. Lewis' representatives on numerous occasions, including telephone contacts made by Mr. Lewis' representatives to Mr. Nicholas. Mr. Nicholas also was engaged in several tax restraints and levies, resulting in the seizure and sale of some of Mr. Lewis' property. In February, 1979, Mr. Nicholas first met with Mr. Lewis at Mr. Lewis' residence in Nesbitt, Mississippi, when he proceeded to that residence to attempt to collect taxes by restraint and levy. At that point, Mr. Lewis disputed that he could owe as much tax as the IRS demanded but no voluntary payment was made prior to seizure. After seizure of some items, Mr. Nicholas entered into negotiations with Mr. Lewis' representatives and accepted cash of $40,000.00 and an installment agreement dated March 13, 1979, which agreement was signed by Mr. Lewis. Tr.Ex. 1. Mr. Nicholas testified that Mr. Lewis defaulted in the terms of that agreement, including his failure to file his 1978 return and to pay that return in full on or before April 16, 1979.

The debtor attempted in examination of Mr. Nicholas to dispute the amount of taxes owed and to show that the debtor had paid a significant amount of his tax obligations during the years at issue. *See* Tr. Ex. 2. However, the proof clearly established that the IRS, under applicable Internal Revenue Code provisions, may add to its tax assessment not only tax obligations but statutory penalties and interest when the taxes are not timely paid. Further, Mr. Nicholas testified as to the difference, under the Internal Revenue procedures, between involuntary and voluntary payments by a taxpayer. Mr. Nicholas' interpretation, with which this Court agrees, was that Mr. Lewis made relatively few voluntary payments after the collection division

took responsibility for tax collections. Mr. Lewis' payments were largely involuntary in nature because they were payments made as a result of seizures or to obtain releases of property or made otherwise in response to the IRS formal collection efforts. *See* Tr. Ex. 17, 18. Moreover, the proof clearly established that Mr. Lewis did not pay all of his tax obligations when they were due, and for the years at issue all of the taxes were not paid with the returns when they were filed. Mr. Lewis' counsel questioned Mr. Nicholas and another IRS witness about the amount of taxes owed and the amounts paid by Mr. Lewis. Tr. Ex. 2, 16 and 20. However, the fact that Mr. Lewis did pay some taxes does not satisfy the statutory concern of whether the debtor "willfully attempted in any manner to evade or defeat" tax obligations. 11 U.S.C. § 523(a)(1)(C). The debtors' tax returns for the years at issue were introduced to show that payments were not submitted for all of the taxes due. Tr.Ex. 20.

The negotiations between Mr. Nicholas and Mr. Lewis' representatives included offers by Mr. Lewis' representatives to assign certain royalties from recording contracts and promises that payments would be forthcoming. Apparently the debtor was attempting to show through this proof that Mr. Lewis' representatives did negotiate in good faith with the IRS; however, there was no proof to show that Mr. Lewis did in fact fulfill the promises to pay all or most of the tax obligations nor that all of the tax obligations were paid. Further, Mr. Nicholas testified that he learned that offers of assignments of royalties were meaningless inasmuch as Mr. Lewis had a negative account on royalty payments due to him in 1979. Mr. Nicholas further testified of promises by Mr. Lewis' representatives that they were engaged in negotiations for new recording contracts and that payments would be forthcoming if the IRS would not file liens, which might disturb those recording contract negotiations. Again, payments as promised were not realized. *See, e.g.,* Tr. Ex. 11. As early as 1978, Mr. Nicholas was told by one of Mr. Lewis' representatives that Mr. Lewis was thinking of filing bankruptcy, but this did not occur until 1988.

There was testimony about the manner in which road show, performance and recording proceeds and expenses were handled. Commonly, road show expenses were paid in cash, but Mr. Lewis' taxes were not paid. Mr. Lewis had, at various times for the tax years at issue, different persons handling the road expenses and managing his financial affairs. However, while there was testimony that Mr. Lewis was a superb performer but not an astute businessperson, there was no proof that Mr. Lewis lacked knowledge that he had tax liabilities for which he was personally responsible. To the contrary, there was proof that Mr. Lewis was aware of the tax obligations and the IRS collection efforts, and that he took some steps to stall and evade payments on his tax liabilities. Moreover, the fact that Mr. Lewis relied upon others for advice or management does not absolve the taxpayer from his responsibility to pay his tax obligations. The debtor offered no authority for this theory.

Mr. Nicholas testified that he concluded from his investigation that Mr. Lewis was placing some property, including intangibles such as proceeds from recording contracts and/or performance payments, in other names, such as corporate names, in order to shield property and proceeds from tax collection efforts. There was proof to support the conclusion of Mr. Nicholas' investigation. For example, a corporation was formed in July, 1978, under the name Jerry Lee Lewis and Company, Inc. Tr. Ex. 7. Another corporation was formed in August, 1978, under the name Talentdisk, Inc. Tr. Ex. 8. Talentdisk was formed allegedly for the purpose of entering into recording contracts on behalf of Mr. Lewis. Tr. Ex. 9. Jerry Lee Lewis and Company, Inc. was formed for the purpose of handling the road show performance money received as a result of Mr. Lewis' performances. No money was paid to the IRS from these corporations except for a small amount of payroll taxes withheld for musicians other than Mr. Lewis. The Talentdisk agreement

proposed to pay $12,000.00 per year to Mr. Lewis for his recording work. *See also* Tr. Ex. 10, interrogatory response no. 29. Talentdisk received $368,750.00 in income from August 15, 1978 to March 9, 1981. Tr. Ex. 10, interrogatory response no. 38. Further, Mr. Nicholas discovered that certain automobiles were purchased for Mr. Lewis but placed in the name of other individuals. *See* Tr. Ex. 4, 6. The creation of these corporations and the acquisition of automobiles occurred after the IRS collection efforts began. There was testimony from one witness that Mr. Lewis was present at a meeting in Nashville, Tennessee, where a discussion took place concerning creation of corporations to shelter income from IRS seizure. *See also* Tr.Ex. 12.

In 1978, Mr. Nicholas discovered two bank accounts in which Mr. Lewis had an interest, which accounts were in third parties' names. When a levy was made, one of the accounts had been closed by a $50,-000.00 cashier's check withdrawal and approximately $120,000.00 had been run through that account.

In September, 1979, during a second seizure process at Mr. Lewis' home, IRS agents found in excess of $31,800.00 in cash and a $3,000.00 cashier's check hidden in a bathroom. After this seizure, Mr. Lewis' representatives paid $34,000.00 to the IRS, being proceeds received from a recording contract, to repurchase some items from the IRS seizure and to stall an IRS sale of other seized assets.

After this seizure, Mr. Lewis' representatives offered in negotiations with the IRS to give security on Mr. Lewis' home and realty in Mississippi to assure the future payment of taxes. However, Mr. Nicholas, through investigation, learned that that property was titled in the name of another, with Mr. Lewis having a life estate, and the titled owner did not agree to the offer of the real property as security. In fact, some evidence was presented that indicated that a fabricated quit claim deed from the owner and a mortgage from another third party were submitted to the IRS. *See* Tr. Ex. 11 and 15.

After negotiations further broke down, the IRS conducted a sale of assets seized in September, 1979. Tr. Ex. 13. The IRS continued its collection efforts and in those efforts levied on some road shows and performances by Mr. Lewis to seize the performance proceeds. The IRS also seized some automobiles.

Mr. Nicholas made at least two appointments with Mr. Lewis in December, 1980, in order to discuss the tax obligations, but Mr. Lewis failed to appear. A meeting in April, 1981, was cancelled by Mr. Lewis. It was at this point that Mr. Nicholas made his referral to the criminal investigation division. Tr.Ex. 16. But, after this referral, civil collection efforts continued. On at least two occasions, the IRS levied on road show performances and Mr. Lewis failed to perform. On one occasion, the IRS learned that Mr. Lewis had been paid in advance for a performance, and the IRS's levy effort was thwarted.

After the conclusion of the criminal trial, the IRS learned that Mr. Lewis had in 1982 leased a Rolls Royce automobile after making a $10,000.00 advance payment. Tr. Ex. 3. In a 1985 seizure, the IRS learned of another vehicle in Mr. Lewis' wife name. At this time, Mr. Lewis was living in a condominium in Memphis, paying $4,000.00 per month under a lease.

For three of the tax years, Mr. Lewis' accountant filed amended returns, but upon review, the IRS increased the taxes due for those years. An offer and compromise was submitted by Mr. Lewis for these three years, 1975, 1976 and 1977, but the IRS did not accept it. Tr.Ex. 19.

An IRS representative testified that the IRS records contained cash transactions on the federal Currency and Banking Retrieval System, and those records revealed that between November 1, 1984 and February 2, 1992, the debtor or third parties on his behalf engaged in $890,559.00 in cash transactions. Tr. Ex. 21. Many of these transactions were check cashing or currency exchanges, ranging up to $112,500.00 for a single transaction. There was further testimony and documentary proof to support that Mr. Lewis commonly dealt in

cash transactions, many in large amounts and often for luxury items such as vehicles, jewelry, and a fur coat. *See* Tr. Ex. 14; Tr. Ex. 24, deposition testimony of Gerald A. Tipp, Sr.; and Tr. Ex. 22, deposition testimony of Kathy Jones. This evidence certainly established that the debtor had significant cash available during years when taxes were remaining unpaid.

▆▆▆▆ The Court finds that the evidence clearly establishes that Mr. Lewis failed to pay all of his taxes as they became due and that such a pattern of nonpayment exists so as to establish that Mr. Lewis willfully failed to pay these taxes for the years at issue. The determination of a "willful" attempt to "evade or defeat" taxes under 11 U.S.C. § 523(a)(1)(C) is a factual issue. *Sells v. U.S.*, 92–1 U.S.T.C. ¶ 50,070 at 83, 284 (Bankr.D.Colo.1991). If such a willful act is found the taxes are nondischargeable. *See e.g., In re Gilder*, 122 B.R. 593, 596 (Bankr.M.D.Fla.1990). From all of the proof in this proceedings, this Court finds that Mr. Lewis willfully attempted to evade or defeat payment of taxes.

The statute clearly contemplates evasion or defeat of tax payments by willful concealing of assets. *See, e.g., In re Sumpter*, 136 B.R. 690, 701 (Bankr.E.D.Mich. 1991); *In re Jones*, 116 B.R. 810, 814 (Bankr.D.Kan.1990). As the *Jones* Court pointed out, the statutory phrase " 'in any manner' is sufficiently broad to include willful attempts to evade taxes by concealing assets to protect them from execution or attachment." *In re Jones*, 116 B.R. at 814. This debtor engaged in a pattern of concealing assets, dealing in cash, shielding income, and otherwise frustrating various IRS collection efforts, and the debtor clearly knew that the IRS was attempting to collect such taxes.

The debtor's actions were willful. Willful for § 523(a)(1)(C) purposes has been interpreted recently by some courts to contain the same elements required for willfulness under 26 U.S.C. § 7201. *Matter of Toti*, 141 B.R. 126, 130 (Bankr.E.D.Mich. 1992); *In re Ermenc*, 92–2 U.S.T.C. ¶ 50,-317 (Bankr.N.D.Ind.1992). As such, some courts have held that a willful commission,

as contrasted to an omission, may be required. *Matter of Toti*, 141 B.R. at 130 (citing *Spies v. U.S.*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943)). Assuming, without so holding, that the *Toti* interpretation, which is most favorable to debtors, is correct, the IRS in this proceeding produced proof that established beyond a preponderance of evidence that this debtor engaged in a willful commission of acts to evade or defeat tax obligations for the years at issue. *Compare Collins v. U.S.*, 848 F.2d 740, 742 (6th Cir.1988); *Sells v. U.S.*, 92–1 U.S.T.C. ¶ 50,070 (Bankr.D.Colo. 1991); *In re Gilder*, 122 B.R. 593, 595 (Bankr.M.D.Fla.1990); *In re Clate*, 69 B.R. 506, 509 (Bankr.W.D.Pa.1987) (for interpretations of "willful"). This proof established voluntary and intentional acts to evade or defeat tax liability. *See, e.g., In re Carlen*, 1991 WL 424977 (Bankr. N.D.Ind.1991) (concluding that the standards for willful or intentional acts under 26 U.S.C. § 6653(b) were persuasive authority for § 523(a)(1)(C) purposes). And there was no persuasive proof that the debtor misunderstood his tax liability, other than he disagreed with the amount. *See, e.g., In re Peterson*, 132 B.R. 68, 71 (Bankr.D.Wyo.1991). This debtor made few voluntary tax payments. That finding also supports a conclusion that the debtor willfully evaded or defeated tax obligations. *In re Fernandez*, 112 B.R. 888, 892 (Bankr.N.D.Ohio 1990).

▆▆▆▆ Mr. Lewis knew that he owed taxes and procedures were available to him to resolve any dispute over the amount of taxes owed. The debtor can not now defend his nonpayment of taxes in this dischargeability proceeding by saying that he did not owe what the IRS demanded. The debtor appears to be contending that he paid most, if not all, of the base tax for certain years and that § 523(a)(1)(C) does not include nonpayment of statutory penalties and interest. The Court does not agree with this position. The statute appears clear in its prohibition against willful attempts "in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). Moreover, "such tax" in this context includes

statutory penalties and/or interest assessed due to nonpayment of the taxes. *See* 11 U.S.C. § 523(a)(7)(A) and 26 U.S.C. § 6671(a).

 The statutory penalties and interest that accrue under the Internal Revenue Code are a result of the taxpayer's failure to pay the base tax when due. 26 U.S.C. § 6671(a). The government has introduced admissible and competent proof by means of a certification of the amount of its assessment for the tax years at issue. *U.S. v. Pomponio*, 635 F.2d 293, 296 (4th Cir. 1980). The assessments are "presumptively correct," and the assessments establish a prima facie case for the government. *Id.; U.S. v. Besase*, 623 F.2d 463, 465 (6th Cir.1980), *cert. den.*, 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 605 (1980). The debtor has not overcome the government's proof, nor has the debtor shown the assessments to be erroneous. *Sinder v. U.S.*, 655 F.2d 729, 731 (6th Cir.1981).

The Court concludes that § 523(a)(1)(C)'s language of "such tax" includes the statutory penalties and interest accruing on taxes and that the government has carried its burden of proof as to the amount of the assessment for the tax years at issue. *See, e.g., McKay v. U.S.*, 957 F.2d 689, 691 (9th Cir.1992); 11 U.S.C. § 523(a)(7). As the *McKay* Court discussed, § 523(a) renders "any debt" nondischargeable if it falls within the exception of § 523(a)(1)(C). 957 F.2d at 693. Section 523(a)(1) refers to § 523(a)(7) that addresses by negative reference the nondischargeability of debts for tax penalties connected to nondischargeable taxes. *Id; compare In re Carlen*, 1991 WL 424977 (Bankr.N.D.Ind.1991) (discussing the ambiguity in § 523(a)(7)). Statutory interest on the tax debt is also nondischargeable if the underlying tax debt is nondischargeable. *Matter of Larson*, 862 F.2d 112, 119 (7th Cir.1988).

## CONCLUSION

The government has established by a preponderance of the evidence that Mr. Lewis willfully attempted and did in fact evade and defeat the payment of taxes, including statutory penalties and interest, for the tax years 1977, 1978, 1979, 1980, 1982, 1983 and 1984. The unpaid assessments for those tax years, plus continuing statutory penalties and interest, are excepted from the debtor's discharge pursuant to 11 U.S.C. § 523(a)(1)(C).

SO ORDERED.