**In re Donald J. PIERCE and Mary Ann Pierce, Debtors.**

**Donald J. PIERCE and Mary Ann Pierce, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 93–61552KW.**
**Adv. No. 94–6041KW.**

United States Bankruptcy Court, N.D. Iowa.

April 12, 1995.

---

Steve Swift, Cedar Rapids, IA, for plaintiffs/debtors.

Tracy Martinez, Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

### ORDER

PAUL J. KILBURG, Bankruptcy Judge.

On February 13 and 14, 1995, the above-captioned matter came on for trial pursuant to assignment. Debtors/Plaintiffs Donald John Pierce and Mary Ann Pierce were represented by Steve Swift. Attorney Tracy Martinez represented Defendant United States of America on behalf of the Internal Revenue Service ("IRS"). After presentation of evidence and arguments of counsel, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### STATEMENT OF FACTS

Debtors' adversary complaint seeks a determination of the dischargeability of federal income taxes and related penalties and interest from 1978, 1979, 1980, 1982 and 1986. Also at issue is the dischargeability of pre-petition interest relating to Federal employment and unemployment taxes assessed against Donald Pierce in 1980 through 1982. The IRS argues that the income tax debts are nondischargeable under 11 U.S.C. § 523(a)(1)(C) because Debtors have willfully attempted to evade or defeat such taxes. It further claims that the 1986 income tax debt is nondischargeable under § 523(a)(1)(B)(i) because Debtors failed to file a return for that year. The IRS also asserts that prepetition interest on nondischargeable tax debts is likewise nondischargeable.

The parties have stipulated to many of the relevant facts in their Pre–Trial Statement on pages 15 through 22. The Pre–Trial Statement specifically sets out the amounts of taxes, interest and penalties assessed for the relevant years, the dates of filing of liens, and the IRS' application of Debtors' payments. A total of 11 liens were filed from 1987 through mid–1993.

Also undisputed by the parties are the facts underlying Debtors' transfers of real estate through Daniel Hempfer to the Red Brick Trust and Price Auto Trust in February of 1993. Debtors held beneficial ownership interests in these Trusts. The Trusts reconveyed the property to Debtors in November and December of 1993, after which the Trusts were dissolved.

Debtors claim that they set up the Trusts so that if they died, the property would not be tied up. They testified that they had recently been involved with the probate of the estate of Mary Ann Pierce's father which was complicated by problems with real estate conveyances including tax liens. Debtors claim that this led to their desire to avoid probate procedures by putting the property in the Trusts. Debtors further testified that they knew the Trusts would not defeat the IRS' liens which were perfected prior to the transfers. They state that there was little if any equity in the property at the time of the transfers.

Debtors testified that they had problems getting their tax information together to prepare their returns during the relevant years. Mrs. Pierce, who did the bookkeeping for Mr. Pierce's garage business, had some health problems during this time. Mr. Pierce quit his outside employment and began working exclusively at his garage in 1977. Debtors state that they filed returns

late for various reasons. Some of their returns were filed unsigned.

During 1977 through 1981, Debtors were subject to an audit by the IRS. The Pretrial Statement shows that Debtors have made sporadic payments of some of the 1978, 1979, 1980 and 1982 taxes through the years. During this time, Debtors also failed to pay local property taxes. Mrs. Pierce testified that they felt there was no point in paying property taxes since the IRS would eventually take the property anyway for payment of income tax.

Debtors have been involved in a total of five bankruptcy cases since 1988, filed either singly or jointly. They filed a lawsuit against the IRS in 1993, assisted by a paralegal. That lawsuit has now been dismissed. Debtors have also filed "common law liens" against individual IRS agents. Debtors prefer to categorize these activities as a long-term legitimate dispute over tax liability rather than a deliberate attempt to avoid proper assessment or payment of their taxes.

The parties have stipulated that Debtors filed a document purporting to be their 1986 tax return in April 1988. This document is reproduced as Plaintiff's Exhibit 11. It is a 1986 Form 1040 with attached Schedule C. Both of the Debtors' signatures appear on page 2. The "Date" column is blank. None of the printed material at the signature block is altered or deleted. Page 1 of Exhibit 11 shows an IRS "RECEIVED" stamp dated APR 07 1988.

The IRS sent Debtors a letter on June 15, 1988 stating that Debtors' signatures were needed for the 1986 return and requesting that they sign a declaration at the bottom of the letter. The declaration, also known as a "jurat", reads as follows:

> Under penalties of perjury, I declare that I have examined the return identified with this letter, including any accompanying schedules and statements, and to the best of my knowledge and belief it is true, correct, and complete. I understand this declaration will become a permanent part of that return.

Debtors signed the declaration and returned it with the words "Under penalties of perju-

ry" crossed out. The IRS sent another letter on June 6, 1989 again requesting Debtors sign and return the declaration. Debtors assert that they did sign and return the declaration unaltered at that time. The IRS asserts that it received no response to that final request.

The 1986 return was never processed. In October, 1988, the IRS filed a substitute return for Debtors for the 1986 tax year.

Considering the stipulations and concessions of the parties, three issues remain for the Court's determination: 1) whether a 1986 tax return was filed, 2) whether Debtors willfully attempted to evade or defeat taxes making those taxes nondischargeable, and 3) whether prepetition interest on the taxes is nondischargeable if the tax debts themselves are nondischargeable. The parties agree that 1980 through 1982 employment and unemployment taxes assessed against Donald John Pierce are nondischargeable. *See* 11 U.S.C. § 507(a)(7)(C). The parties also agree that prepetition penalties are dischargeable. *See In re Roberts*, 906 F.2d 1440 (10th Cir.1990). Debtors withdrew their challenge to the timeliness of the IRS's objections at trial. *See In re Fernandez*, 112 B.R. 888 (Bankr.N.D.Ohio 1990).

### CONCLUSIONS OF LAW

Debtors filed this adversary proceeding seeking to have their tax debt declared dischargeable. The IRS asserts that this debt is nondischargeable under § 523(a)(1). The burden of proving that Debtors' tax liabilities are nondischargeable is on the IRS. *In re Olson*, 154 B.R. 276, 280 (Bankr.D.N.D.1993). The IRS must meet this burden by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 285, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991).

### FAILURE TO FILE 1986 RETURN

■ The IRS asserts that the 1986 Form 1040 it received from Debtors lacked appropriate signatures and that Debtors' July 1988 signatures on the declaration with "Under penalties of perjury" crossed out were invalid. It also asserts that it has never received the signed, unaltered declaration which Debtors state they mailed to the IRS in July 1989.

■ In order for a document to constitute a valid tax return, it must be verified under penalty of perjury. *Hettig v. United States*, 845 F.2d 794, 795 (8th Cir.1988). The Internal Revenue Code requires the execution of an unqualified jurat, or declaration. *See* 26 U.S.C. §§ 6061, 6065. An unsworn tax return fails to satisfy the requirements of law. *Mosher v. I.R.S.*, 775 F.2d 1292, 1295 (5th Cir.1985), *cert. denied*, 475 U.S. 1123, 106 S.Ct. 1645, 90 L.Ed.2d 189 (1986), citing *Lucas v. Pilliod Lumber Co.*, 281 U.S. 245, 50 S.Ct. 297, 74 L.Ed. 829 (1930). Thus, documents which are not verified are not considered tax returns under the Internal Revenue Code. *United States v. Moore*, 627 F.2d 830, 834 (7th Cir.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981).

■ One Bankruptcy Court has held that any deletion or addition to the jurat qualifies it and is invalid. *In re Schmitt*, 140 B.R. 571, 572 (Bankr.W.D.Okla.1992). Thus, an altered jurat on a tax return makes the return ineffective and the tax nondischargeable under § 523(a)(1)(B)(i). *Id.* In *In re Eastwood*, 164 B.R. 989, 991 (Bankr.E.D.Ark. 1994), a debtor argued that a signature on a letter electing to be treated as "married filing jointly" constituted a sufficiently signed return under § 523(a)(1)(B)(i). The court stated that "a document is a return only if it purports to be a return, is sworn to as such and evinces an honest and genuine endeavor to satisfy the law." *Id.* at 992. The related taxes were nondischargeable because the debtor's signature was not an attestment under penalty of perjury of the information required on a tax return. *Id.*

The substitute return the IRS filed for Debtors in October 1988 does not relieve Debtors from filing a signed, verified return for 1986. Courts considering the issue are unanimous in holding that the IRS's substitute return does not constitute a filed return under § 523(a)(1)(B)(i) in the absence of the debtor's verified signature. *In re Bergstrom*, 949 F.2d 341, 343 (10th Cir.1991).

■ Under the foregoing, a tax return is considered valid if the taxpayers sign the return verifying the information contained therein under penalty of perjury and the return is properly filed with the IRS. On the record presented, the Court is unable to discern why the IRS rejected Exhibit 11 as a validly filed return. The jurat is unaltered; both of Debtors' signatures are affixed. The only deficiency appears to be the absence of a date in the "Date" column. In reviewing the tax code and regulations, the Court can find no requirement that the required signatures and verifications must be dated to be valid. *See* 26 U.S.C. §§ 6001 et seq.; 26 C.F.R. §§ 1.6061–1, 1.6065–1.

After receiving Debtors' 1986 Form 1040, the IRS sent a letter to Debtors stating: "We have received the above tax form and find we need your signature to complete processing of your return." The record does not indicate in what manner the signatures on the Form 1040 were deficient. Apparently, Exhibit 11 is a copy of the document as received by Debtors from the IRS in response to a request for copies under the Freedom of Information Act. The IRS has not explicitly claimed, nor proven, that Debtors' signatures were missing from the original document. Even though Debtors responded to the IRS letter requesting signatures by returning signatures, with dates, but with an altered jurat, Debtors' original Form 1040 is sufficient to constitute a filed return under § 523(a)(1)(B)(i). Therefore, Debtors' income tax liability for the 1986 tax year is not excepted from discharge under that section.

### WILLFUL ATTEMPT TO EVADE OR DEFEAT TAXES

■ The IRS argues that Debtors have willfully attempted to evade or defeat taxes under § 523(a)(1)(C) by acts of omission and of commission. It states that Debtors' omissions include failure to file returns, filing late returns and failing to pay taxes even after assessments were upheld by the Court. According to the IRS, Debtors' acts of commission include serial bankruptcy filings for automatic stay protection, filing of a frivolous lawsuit and common law liens against IRS employees and dissipation of assets by refusing to pay real estate taxes.

■ Most courts apply the standard used in civil tax fraud cases in considering exceptions to discharge under § 523(a)(1)(C) for willful attempts to evade or defeat taxes. *In re Toti,* 24 F.3d 806, 809 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994); *but see In re Howard,* 167 B.R. 684, 688 (Bankr.M.D.Fla.1994) (applying standard from criminal tax fraud cases). Both acts of commission and acts of omission are within a plain reading of that statute if the acts are voluntary, conscious or intentional. *Toti,* 24 F.3d at 809. In *Toti,* the court found that the debtor's failure to file tax returns and pay taxes constituted a willful attempt to evade taxes. *Id.*

■ Thus, the standard for willfulness in § 523(a)(1)(C) is that the debtor acted voluntarily, consciously or intentionally, or with reckless disregard such as where the debtor knew or should have known that tax was due and the debtor failed to pay. *In re Irvine,* 163 B.R. 983, 987 (Bankr.E.D.Pa. 1994). The government need only show that the debtor's conduct amounts to a knowing and intentional effort to evade or defeat taxes. *In re Hedgecock,* 160 B.R. 380, 385 (D.Or.1993). The standard requires that the intended result of the taxpayer's action is that the United States not receive taxes due. *Langlois v. United States,* 155 B.R. 818, 821 (N.D.N.Y.1993).

■ Courts look to badges of fraud to find proof of intent to evade taxes. *In re Teeslink,* 165 B.R. 708, 716 (Bankr.S.D.Ga. 1994). These include failure to file tax returns, filing returns late, failing to cooperate with the IRS, understating income and concealing assets or income. *Id.* Other badges of fraud in this context are failure to keep accurate records and implausible or inconsistent behavior by the taxpayer. *Irvine,* 163 B.R. at 986.

Courts have held that transfers of property to trusts, corporations or family members can support a finding that debtors willfully attempted to evade taxes. *See In re Sumpter,* 170 B.R. 908, 913 (E.D.Mich.1994) (finding that debtors transferred property to trusts for the benefit of their children in an attempt to prevent attachment of tax liens); *In re Griffith,* 161 B.R. 727, 734 (Bankr.

S.D.Fla.1993) (finding that entering into antenuptial agreement during a period of financial difficulty constituted an attempt to evade payment of taxes); *In re Lewis,* 151 B.R. 140, 144–45 (Bankr.W.D.Tenn.1992) (holding that concealing assets by putting property in corporate names or names of other individuals was attempt to evade taxes); *In re Jones,* 116 B.R. 810, 814 (Bankr. D.Kan.1990) (holding taxes nondischargeable because debtor placed title of property in other's names).

In *Lewis,* the court found indications that the debtor was evading taxes in several types of conduct that are also present in this case. 151 B.R. 140. The debtor did pay some taxes voluntarily but most payments resulted from involuntary seizure of property. *Id.* at 143. The debtor placed property in the names of corporations and placed his cars and bank accounts in the names of other individuals. *Id.* at 144–45. There was no proof that the debtor misunderstood his tax liability other than that he disagreed with the amount the IRS claimed was due. *Id.* at 146. Although he filed tax returns, the debtor's failure to pay taxes when due constituted a pattern of nonpayment which the court concluded was a willful attempt to evade or defeat the taxes. *Id.*

Debtors herein filed their tax returns late. They failed to make complete payments. Even after the assessments were upheld in court, Debtors continued their pattern of nonpayment and filed a frivolous lawsuit and invalid common law liens. They have repeatedly sought bankruptcy protection in the face of attempts by the IRS to collect the validly assessed taxes. They admitted that they refused to pay property taxes so that the IRS would be unable to benefit from any equity in their real estate.

Debtors also transferred their property to trusts in which they held complete ownership interests. They argue that their lack of equity in the property and the fact that IRS liens had already attached to the property show that they were not attempting to defeat or evade taxes by those transfers. However, such transfers can support a finding of evasion of taxes under § 523(a)(1)(C) irrespec-

tive of the value of the property transferred. *Sumpter,* 170 B.R. at 914.

Under these facts and the foregoing law, the Court concludes that Debtors have willfully attempted to evade or defeat taxes under § 523(a)(1)(C). Therefore, Debtors' federal income tax debt from tax years 1978, 1979, 1980, 1982 and 1986 is excepted from discharge.

### INTEREST AND PENALTIES

■ Debtors argue that even if their tax liabilities for 1978, 1979, 1980, 1982 and 1986 are excepted from discharge, the penalties and interest relating to those taxes are dischargeable. They make the same argument regarding prepetition interest on Donald Pierce's 1980–82 employment and unemployment taxes which they stipulate are nondischargeable. The Eighth Circuit has stated that *post* petition interest and penalties accruing as a result of nondischargeable tax liabilities are also nondischargeable. *In re Hanna,* 872 F.2d 829, 831–32 (8th Cir.1989). It has not ruled on dischargeability of *pre* petition interest and penalties.

Most courts agree that prepetition interest on nondischargeable tax debt is likewise nondischargeable. *See In re Teeslink,* 165 B.R. 708, 717 (Bankr.S.D.Ga.1994) (stating that this general rule is now well established). The rationale for this rule is that interest is part of a "claim" as broadly defined in § 101(4)(A). *In re Larson,* 862 F.2d 112, 118 (7th Cir.1988) (holding nondischargeable prepetition interest on tax liability nondischargeable under § 523(a)(1)(A)). *In re Olson,* 154 B.R. 276, 282 (Bankr.D.N.D.1993), followed *Larson* to hold that prepetition interest on tax debt which was nondischargeable under § 523(a)(1)(B)(ii) is likewise nondischargeable. The court in *Teeslink* excepted such interest from discharge where the underlying tax liability was nondischargeable because of the debtor's willful attempt to evade payment of the taxes. 165 B.R. at 717.

■ A different conclusion is mandated regarding prepetition penalties because of the language of § 523(a)(7)(B). Appellate courts considering the issue have adhered to the language of the statute to find that penalties "imposed with respect to a transaction or

event that occurred before three years before the date of the filing of the petition", 11 U.S.C. § 523(a)(7)(B), are dischargeable, even though the underlying tax liability is nondischargeable. *McKay v. United States,* 957 F.2d 689, 693 (9th Cir.1992); *In re Roberts,* 906 F.2d 1440, 1441 (10th Cir.1990). As the parties have stipulated, the prepetition penalties are dischargeable under § 523(a)(7)(B) as they were imposed with respect to transactions or events that occurred before three years before September 20, 1993, the date Debtors filed their bankruptcy petition.

The Court concludes that postpetition interest and penalties as well as prepetition interest on Debtors' nondischargeable tax liabilities are likewise nondischargeable. Therefore, prepetition interest on the income taxes due from tax years 1978, 1979, 1980, 1982 and 1986 which are excepted from discharge under § 523(a)(1)(C) is also nondischargeable. Furthermore, prepetition interest relating to the Federal employment and unemployment taxes assessed against Donald Pierce in 1980 through 1982, and stipulated to be nondischargeable, is also nondischargeable. Finally, all postpetition interest and penalties on all of these taxes are nondischargeable.

**WHEREFORE,** Debtors' federal income taxes due from tax years 1978, 1979, 1980, 1982 and 1986 are excepted from discharge under 11 U.S.C. § 523(a)(1)(C).

**FURTHER,** 1980 through 1982 employment and unemployment taxes assessed against Donald John Pierce are nondischargeable as stipulated between the parties.

**FURTHER,** prepetition interest on all these nondischargeable taxes is also nondischargeable.

**FURTHER,** postpetition interest and penalties relating to these taxes are nondischargeable.

**FURTHER,** prepetition penalties relating to these taxes are discharged as stipulated between the parties.

**SO ORDERED.**