64 F.3d 663
 76 A.F.T.R.2d 95-6408
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re Jerry L. SUMPTER and Santina M. Sumpter, Debtors.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry L. SUMPTER, Defendant-Appellant,
Santina M. Sumpter, Defendant-Appellant.
 Nos. 94-1439, 94-1440.
 United States Court of Appeals, Sixth Circuit.
 Aug. 22, 1995.
 
 Before: MERRITT, Chief Circuit Judge; MARTIN, Circuit Judge; and BERTELSMAN, Chief District Judge.*
 MERRITT, Chief Judge.
 
 
 1
 This consolidated bankruptcy case involves the single issue of whether the debtors' tax liability should be excepted from discharge because they "wilfully evaded" payment of taxes by transferring real property to a trust for the benefit of their children. To answer this question we must interpret Section 523(a)(1)(C) of the Bankruptcy Code. 11 U.S.C. Sec. 523(a)(1)(C). Unlike most debts in a bankruptcy proceeding, Section 523(a)(1)(C) provides that a tax debt is nondischargeable if the debtor "made a fraudulent return or wilfully attempted in any manner to evade or defeat such tax." It is clear that filing a false return or taking affirmative steps to evade a tax renders the debt nondischargeable. The question here is whether the statute also covers conduct that avoids the payment of taxes known to the debtor to be owed. We affirm the Bankruptcy Court and the District Court's determination as to Mr. Sumpter that his portion of the tax debt is not dischargeable in bankruptcy due to his willful attempt to evade payment of taxes by seeking to avoid attachment of assets. As to Mrs. Sumpter, however, we reverse the Bankruptcy Court and the District Court and find that her portion of the tax debt is dischargeable because her actions were not "willful" under the statute.
 
 FACTS
 
 2
 In 1979 Jerry and Santina Sumpter created a Trust naming their two children the sole beneficiaries. The terms of the Trust provided that it could not make loans to the settlors, Santina and Jerry Sumpter. The Trust has had three trustees since its inception, all neighbors, friends or relatives of the Sumpters with limited business experience. The Trust accumulated its assets through its ownership of the building where Mr. Sumpter has his law practice, Sumpter & Perry, P.C. The Trust receives rent from Sumpter & Perry as well as from the other tenants in the building. The Trust has made numerous loans to Sumpter & Perry, P.C. over the years amounting to several hundred thousand dollars. These loans are documented and have always been paid back to the Trust by Sumpter & Perry, P.C.
 
 
 3
 In August 1986, the IRS notified Jerry and Santina Sumpter of an assessment for joint and several tax liability for 1984 and 1985. A year later, the IRS notified the Sumpters of another assessment for tax years 1981 and 1982. In December 1987, the Sumpters received a second notice of tax delinquency from the IRS for years in question. Two weeks after receiving the second notice, in January of 1988, the Sumpters received $90,000 from the Trust, which they used to pay debts incurred by Sumpter & Perry, P.C. This is the first time the Sumpters themselves, instead of the law firm, had received a loan directly from the Trust. (The terms of the Trust make it a violation for the Sumpters, but not for Sumpter & Perry, P.C., to receive a loan from the Trust.) As collateral for the loan from the Trust, the Sumpters gave the Trust a mortgage on six pieces of property they own. In April 1988, the IRS sent the Sumpters a final demand notice by registered mail.
 
 
 4
 On April 21, 1988, Mr. Sumpter met with an IRS agent who told him that the IRS was about to start collection proceedings against the Sumpters. On the same day, the Sumpters transferred ownership of the six pieces of property to the Trust, thereby extinguishing the mortgage debt owed by the Sumpters to the Trust. On May 3, 1988, the IRS filed a notice of tax lien against the Sumpters.
 
 
 5
 In September 1989, the Sumpters filed a voluntary petition under Chapter 7 of the Bankruptcy Code seeking to discharge, among other debts, the debt owed to the IRS. Three months later, the United States brought a four-count adversary proceeding against each of the Sumpters individually to prevent the discharge of their tax liability pursuant to 11 U.S.C. Secs. 523(a)(1)(C), which prohibits wilfully evading or defeating payment of their federal taxes. The Bankruptcy Court granted summary judgment to the government as to Mr. Sumpter under Section 523(a)(1)(C) for wilful evasion of taxes and therefore did not reach the other counts. The government's summary judgment motion as to Mrs. Sumpter was denied for all counts, including Section 523(a)(1)(C) and a trial was held. At trial, the Bankruptcy Court found that Mrs. Sumpter also wilfully evaded payment of federal taxes under Section 523(a)(1)(C) by fraudulently conveying property and held that her portion of the IRS debt could not be discharged. The District Court affirmed the Bankruptcy Court's findings in two separate opinions. (J.A. at 257 (Mrs. Sumpter), J.A. at 212 (Mr. Sumpter)) The Sumpters both appealed and their separate appeals were consolidated for review by this Court.
 
 DISCUSSION
 Standard of Review
 
 6
 We review the District Court's interpretation of the Bankruptcy Code and its conclusions of law de novo. In re Perlin, 30 F.3d 39, 40 (6th Cir.1994). We review the Bankruptcy Court's factual determinations, in which the District Court concurred, under a "clearly erroneous" standard. Id.
 
 Section 523(a)(1)(C)
 
 7
 A debtor under Chapter 7 of the Bankruptcy Code generally is granted a discharge from all debts that arise before the filing of the bankruptcy petition. 11 U.S.C. Sec. 727(b). Section 523, however, provides exceptions to discharge of certain debts. 11 U.S.C. Sec. 523(a)(1)(C) provides in pertinent part:
 
 
 8
 (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt--
 
 
 9
 (1) for a tax or customs duty--
 
 
 10
 ....
 
 
 11
 (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax; ...
 
 
 12
 The sole issue in this case is whether the District Court was correct in affirming the Bankruptcy Court's conclusion that the Sumpters "wilfully" attempted to evade payment of their taxes in violation of Section 523(a)(1)(C). There is no dispute that returns were filed and that taxes are owed. The debtors make three arguments that their conduct does not fall within the statute. First, the debtors argue that their conduct of evading payment is not covered by the plain language of Section 523(a)(1)(C) because all they did was fail to pay the taxes owed. They argue that they did not take an affirmative step to evade or defeat the tax. They contend that mere non-payment cannot be construed as wilful evasion under Section 523(a)(1)(C). Second, the debtors argue that because the property was already heavily mortgaged (albeit to a trust for the benefit of their children) and therefore of little cash value, the transfer did not affect the value of their estate and therefore the IRS did not lose anything by the transfer. Finally, the Sumpters also contend that the factual findings of the Bankruptcy Court were clearly erroneous and that the government failed to prove that they wilfully evaded payment of taxes. We will consider the Sumpters' arguments separately below.
 
 
 13
 As an initial matter, the debtors argue that the standard of proof for applying the dischargeability exception under Section 523(a)(1)(C) is clear and convincing evidence of willful evasion, instead of the preponderance of the evidence standard used by the bankruptcy court. Although the Sixth Circuit has not directly ruled on this point, debtors appear to be wrong. In Grogan v. Garner, 498 U.S. 279, 284-86 (1991), the Supreme Court clearly stated that "the standard of proof for the dischargeability exceptions in 11 U.S.C. Sec. 523(a) is the ordinary preponderance of the evidence standard." Id. at 292. Although Grogan concerned specifically Section 523(a)(2), not Section 523(a)(1)(C), the language used by the Supreme Court seems to encompass all of Section 523(a) and the other circuit courts and bankruptcy courts from this circuit interpreting Grogan have used the preponderance of the evidence standard. See, e.g., In re Graham, 973 F.2d 1089, 1101 (3d Cir.1992) ("the text of [Grogan ] consistently refers to section 523(a) in general"); Levinson v. United States, 969 F.2d 260 (7th Cir.), cert. denied, 113 S.Ct. 505 (1992); Goff v. IRS, 180 B.R. 193, (Bankr.W.D.Tenn.1995) (unpublished); Ragone v. United States, 170 B.R. 324, 327 (Bankr.N.D.Ohio), aff'd, 179 B.R. 521 (N.D.Ohio 1994). Debtors have not cited any case to the contrary since Grogan was decided.
 
 Mr. Sumpter
 
 14
 As to the Sumpters first argument, a recent Sixth Circuit case interpreting this part of Section 523 controls many aspects of this case. United States v. Toti, 24 F.3d 806 (6th Cir.), cert. denied, 115 S.Ct. 482 (1994). In Toti, this Court concluded that a civil definition, not criminal, of willful should be applied to Section 523(a)(1)(C). The Court held that the proper definition of "willfully" under a Section 523(a)(1)(C) discharge case is like that found in other civil tax cases: voluntary, conscious and intentional. Id. at 809. Furthermore, the Court, after examining the unambiguous language of the statute and similar language in the tax code, found that the words "in any manner" are broad enough to encompass attempts to thwart payment of taxes. Id.; accord In re Bruner, 55 F.3d 195 (5th Cir.1995); Sells v. United States, 92-1 U.S.T.C. (CCH) p 50,070 (D.Colo.1991); In re Jones, 116 B.R. 810 (Bankr.D.Kan.1990). But see In re Haas, 48 F.3d 1153 (11th Cir.1995) (finding that evading payment or collection is not a violation of Sec. 523(a)(1)(C)); In re Gathwright, 102 B.R. 211 (Bankr.D.Or.1989) (same).
 
 
 15
 There can be no question here that the Bankruptcy Court correctly found that Mr. Sumpter wilfully evaded paying his taxes. Mr. Sumpter admitted in his deposition that he attempted to thwart attachment of the federal tax liens by transferring property to the Trust:
 
 
 16
 Q. (by the Government) Was the reason for transferring the properties to the trust to protect them from the Federal Tax Liens?
 
 
 17
 A. (by Mr. Sumpter) I think the real reason was to discharge the mortgage and to provide what equity we could to discharge the mortgage for fear it would be--a lien would be imposed against it and turn into a rat's nest.
 
 
 18
 * * *
 
 
 19
 Q. The question is "was one of the purposes or an additional purpose for transferring the properties to prevent the Federal Tax liens from attaching to the properties?"
 
 
 20
 A. Yes.
 
 
 21
 Deposition of Jerry Sumpter at 50-51, J.A. at 713-14 (emphasis added). Given this admission, and in light of the recent holding by this Court in Toti, it seems clear that, as a matter of law, Mr. Sumpter "wilfully attempted ... to evade or defeat" his taxes in violation of Section 523(a)(1)(C). The only question is whether evading or defeating attachment of assets is included in the statutory language. Our conclusion in Toti that any affirmative step, including evading or defeating payment of taxes, is included in the statute and the fact that attachment is usually the first step taken by the IRS in attempting collection of the payment seems sufficient to include the admitted action by Mr. Sumpter of evading or defeating attachment.
 
 
 22
 We note that of the two cases that arguably support Mr. Sumpter's argument here, In re Gathwright and In re Haas, In re Gathwright has been rejected by the majority of courts to address it. See, e.g., In re Fridrich, 156 B.R. 41 (D.Neb.1993); In re Griffith, 161 B.R. 727, 733 (Bankr.S.D.Fla.1993); In re Lewis, 151 B.R. 140 (Bankr.W.D.Tenn.1992). The case recently decided by the Eleventh Circuit, In re Haas, is readily distinguishable from the facts here. In Haas, the debtor had timely filed his tax return but, like Mr. Sumpter, had never paid his taxes, choosing instead to pay certain business and personal debts. The Eleventh Circuit noted that if mere nonpayment of taxes would render the debt excepted from discharge, it would contravene the purpose of the Bankruptcy Code, which is to allow a fresh start for the "honest but unfortunate" debtor. See Grogan v. Garner, 498 U.S. 279, 285 (1991). Mr. Haas took no affirmative steps to avoid paying his taxes, he simply did not pay them and continued to pay other debts. In contrast, Mr. Sumpter took the affirmative step of transferring property to avoid its attachment as a tax lien, an act to which he admits. By taking this affirmative step, Mr. Sumpter attempted to "wilfully evade or defeat" payment of his tax debt and he is excepted from discharge of that debt under Section 523(a)(1)(C).
 
 
 23
 In addition to the statutory interpretation argument made above, Mr. Sumpter also argues that certain facts make it impossible for his conduct to fall within the statute. It is true, as Mr. Sumpter argues, that the transfer arguably did not affect the worth of the Sumpters' estate due to the mortgage on the transferred property. Mr. Sumpter argues that due to the mortgage on the property held by the Trust there was no value that the IRS could recover from the property even if it attached the lien. As there was arguably no monetary value that the IRS could recover, Mr. Sumpter asserts that there is no way he could be evading collection or payment of taxes. This argument is flawed, however, because the value of the property is not the touchstone. The issue is the conduct of the taxpayer. The timing and sequence of events here makes it arguable that the Sumpters specifically took the $90,000 loan from the Trust explicitly so they could make a "legitimate" transfer of the property to the Trust to avoid attachment of the property. They had never taken a personal loan from the Trust before (all the loans had been to Mr. Sumpter's law practice) and, moreover, they were prohibited by the terms of the trust agreement from doing so. The loan was taken in January 1988, right after they received the second delinquency notice from the IRS. Also, the transfer was to a Trust from which Mr. Sumpter's business took regular loans for operating expenses, including presumably Mr. Sumpter's salary. Indeed, the evidence showed that Mr. Sumpter, through Sumpter & Perry, had a great deal of control over the assets of the Trust and the Trust was regularly used to pay Sumpter & Perry expenses. Therefore, arguing that transfer of the property to the Trust did not affect the value of the estate is without much force because he has shown by previous conduct that he often reaps business and personal benefit from the Trust monies.
 
 
 24
 In addition, had the IRS been able to attach the property when it was still mortgaged to the Trust it is unclear that the IRS would have had lower priority than the Trust/mortgagor to any proceeds from the sale of the property. Given these facts, we affirm the grant of summary judgment to the IRS against Mr. Sumpter.
 
 Mrs. Sumpter
 
 25
 As to Mrs. Sumpter, the IRS argued that Mrs. Sumpter fraudulently transferred real estate to her children's trust to evade taxes she knowingly owed. She first contends, similar to Mr. Sumpter, that a fraudulent conveyance intended to thwart collection of taxes is not covered by Section 523(a)(1)(C). The same legal arguments used against Mr. Sumpter, outlined above, also defeat Mrs. Sumpter's proposed construction of the statute. Because Mrs. Sumpter did not admit to attempting to avoid payment of taxes as did Mr. Sumpter, the government bore the burden at trial of proving that her actions were the type that satisfy the "wilful" language of the statute.
 
 
 26
 The IRS used a traditional "badges of fraud" inquiry to attempt to prove Mrs. Sumpter's intent wilfully to evade taxes through the transfer of property. Here the bankruptcy court found the following facts were badges of fraud supporting a finding of willful evasion: (1) the transfer was made to a family member as the Trust is held in favor of the Sumpter's children; (2) the transfer was made at a time when a large liability, here a tax payment, was fixed; (3) the transfer was for no consideration because the $90,000 loan received by the Sumpters in exchange for the mortgage went directly to Sumpter & Perry, P.C., a corporation in which Mrs. Sumpter has no direct financial interest. Mr. Sumpter, however, owns more than 99% of the stock of Sumpter & Perry, P.C.; (4) the transfer was made when Mrs. Sumpter was insolvent, as the Sumpters had only $100-200 in their checking account when the transfer was made; (5) Mrs. Sumpter retained hidden control over the asset. The Sumpters apparently used the Trust as a conduit for payment of Sumpter & Perry's expenses, and, in turn, for their own personal expenses and (6) Mrs. Sumpter engaged in other questionable practices during the same period. Examples of these practices include the Sumpters receiving the $90,000 loan from the Trust even though they were prohibited from receiving loans from the Trust under the Trust Agreement. Furthermore, all the other loans had been made directly from the Trust to Sumpter & Perry, not to the Sumpters directly. The government argued that the Sumpters made this loan to themselves so that they could then "legitimately" transfer the property to the Trust. United States v. Sumpter, 136 B.R. at 701 (J.A. at 487-96). The district court affirmed these findings. (J.A. at 265-72).
 
 
 27
 While some of these findings, standing alone, are not clearly erroneous, the ultimate conclusion that Mrs. Sumpter's actions and mental state were "willful" under the statute is not supported by the facts. Mrs. Sumpter was raised in Italy and has only a high school education. The Bankruptcy Court found that she defers to her husband on most issues and has very little, if anything, to do with his business. Findings of Fact and Conclusions of Law (filed July 9, 1991) at 13. There is no evidence that she had any real control over the Trust assets when she signed the document to receive the loan from the Trust or that she understood that transfer to be any different from the earlier transfers. Mrs. Sumpter simply signed the document at the direction of her husband. Id. The transfer was, in effect, another business transaction by Mr. Sumpter of which Mrs. Sumpter had little knowledge or control.[1]
 
 
 28
 The government does not dispute this but states that because she voluntarily signed over her property to the Trust and knew that she and her husband owed the IRS a considerable sum of money, her actions were "willful." Neither we nor the IRS want to encourage a spouse to turn a "blind eye" to the couple's tax situation and even minimal involvement in the family's financial affairs can be sufficient in some circumstances. In this case, however, where the conduct primarily concerned Mr. Sumpter's business affairs, which were fairly complex, Mrs. Sumpter's actions cannot be said to be "willful" under Section 523(a)(1)(C). On balance, the Bankruptcy Court and the District Court's conclusion that Mrs. Sumpter "wilfully evaded" payment of taxes under Section 523(a)(1)(C) is in error and is reversed.
 
 
 29
 For the foregoing reasons, we AFFIRM the judgment as to Mr. Sumpter and REVERSE the judgment as to Mrs. Sumpter.
 
 
 
 *
 The Honorable William O. Bertelsman, Chief Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 While not directly applicable here, the tax code provides some guidance in examining this issue. The standard under the "innocent spouse" exception, 26 U.S.C. Sec. 6013(e)(1), is "whether a reasonable person under the circumstances of the taxpayer at the time of signing the [tax] return could be expected to know of the omissions." Shea v. Commissioner, 780 F.2d 561, 566 (6th Cir.1986)